430 F.2d 49
 Earl A. LOVE, Plaintiff-Appellant,
v.
The PULLMAN COMPANY, an Illinois corporation, Defendant-Appellee, and United States of America, and Equal Employment Opportunity Commission, Intervenors.
The PULLMAN COMPANY, an Illinois Corporation, Defendant-Cross Appellant,
v.
Earl A. LOVE, Plaintiff-Cross Appellee.
 No. 209-69.
 No. 226-69.
 United States Court of Appeals Tenth Circuit.
 September 22, 1969.
 On Rehearing in No. 209-69 July 30, 1970.
 
 Hugh J. McClearn, Denver, Colo. (Frederick Miles and Van Cise, Freeman, Tooley & McClearn, Denver, Colo., with him on the briefs), for appellant and cross-appellee.
 Edward C. Eppich, Denver, Colo., (Neef, Swanson, & Myer, Denver, Colo., with him on the brief), for appellee and cross-appellant, The Pullman Co.
 Benjamin W. Mintz, Atty., Dept. of Justice, Washington, D. C. (Stephen P. Passek, Atty., Dept. of Justice, Washington, D. C., and James L. Treece, U. S. Atty., with him on the brief), for intervenor, the United States.
 Russell Specter, Acting Gen. Counsel, Washington, D. C. (Marian Halley, Washington, D. C., Atty., with him on the brief), for intervenor, Equal Employment Opportunity Commission.
 Before FAHY, Senior Circuit Judge*, and LEWIS and SETH, Circuit Judges.
 SETH, Circuit Judge.
 
 
 1
 Appellant brought suit pursuant to 42 U.S.C.A. § 2000e-5(f), a portion of Title VII of the Civil Rights Act of 1964, alleging that he was discriminated against in employment because he was a Negro. The appellee moved to dismiss the complaint on the ground that the charge was not timely filed with the Equal Employment Opportunity Commission and that appellant's cause of action was moot. The trial court treated appellee's motion as a motion for summary judgment, and granted it. This appeal was then taken. The Equal Employment Opportunity Commission has filed a brief as amicus curiae.
 
 
 2
 Appellant was employed by the appellee for more than forty years as a Pullman porter. He resigned from this position in November 1968. In 1951 the appellant was classified and began to perform the duties of a "porter in charge." Appellant states that the duties of a porter in charge are for all purposes identical to those of a Pullman conductor, and that porters in charge must at all times be available to work as such a conductor. Porters in charge however receive substantially lower wages than do conductors.
 
 
 3
 In his suit, appellant asserts that he has been restricted to the classification of porter in charge because of his race and that the classification of conductor is primarily an all-white classification from which Negroes were excluded.
 
 
 4
 The trial court found that in 1963 the appellant filed a written charge of discrimination with the Colorado Civil Rights Commission and that in 1965 he orally restated his complaint to that same commission. The court found also that this oral statement did not literally comply with the Colorado statute governing the same, but it was substantial compliance. The court found that the appellant's case was thereby reopened in 1965, but the commission was unable to reach an arrangement with The Pullman Company that was satisfactory to the appellant. The company advised the commission they would promote the appellant to conductor, but by reason of the union contracts he would be very low in seniority as a conductor and that he would probably be laid off. The commission so advised the appellant by letter. This was found by the trial court to have terminated the proceedings on appellant's complaint in July 1965.
 
 
 5
 Thereafter, on May 23, 1966, appellant sent a letter complaint to the Equal Employment Opportunity Commission (EEOC) in Washington making the same complaint that he had to the Colorado commission. When the EEOC received appellant's letter it, in some way undisclosed in the record, informed the Colorado commission that it had received a charge of discrimination which appeared to be within the jurisdiction of the Colorado commission. By letter of June 1, 1966, the Colorado commission advised the EEOC that in light of its prior contacts with the appellant and his failure to return to file a complaint, the commission would not "accept" the sixty day deferment period, waived it, and asked the EEOC to proceed.
 
 
 6
 The EEOC then served a copy of the charge on the appellee and began an investigation. A charge on an EEOC form signed by appellant dated July 23, 1966, also appears in the record, and we assume this supplemented his original letter of May 23, 1966.
 
 
 7
 A "Final Investigative Report" by a Regional Director of the EEOC found no violation of Title VII. He instead found that the Sleeping Car Porters Union and The Pullman Company were in violation of the Act by reason of their union contract. He recommended that a commissioner's charge be brought on this basis. The commission thereafter found otherwise and issued its Decision that there was instead reasonable cause to believe that there was discrimination. On May 3, 1968, the EEOC notified the appellant that it had been unable to secure the appellee's voluntary compliance with Title VII and that the appellant had thirty days in which to bring suit.
 
 
 8
 The appellant then duly filed a complaint and later an amended complaint on behalf of himself and of all persons similarly situated who had suffered from the appellee's alleged discriminatory employment practice. The appellant also prayed that appellee be enjoined from classifying its employees on the basis of race and sought back pay for himself and for the class of persons situated as himself in the amount of the difference between the wages they had earned and what they would have earned but for appellee's discrimination.
 
 
 9
 The trial court in granting summary judgment in favor of the appellee ruled that since the Colorado Civil Rights Commission had terminated its proceedings on appellant's complaint on July 30, 1965, and inasmuch as appellant did not file his charge with the EEOC until May 23, 1966, or more than thirty days after termination, appellant had failed to comply with section 706(d) [42 U.S.C.A. § 2000e-5(d)].
 
 
 10
 The trial court also ruled that since the appellant had resigned from employment with the appellee in November 1968, his request for injunctive relief was moot.
 
 
 11
 We must affirm the trial court on the timeliness of filing issue, and to thereby give effect to the time limits expressed in the statute.
 
 
 12
 It is clear that the Colorado Civil Rights Commission acts under a Colorado statute prohibiting the employment practice alleged and establishing state authority to grant or seek relief all as contemplated in section 706(d) of the 1964 Civil Rights Act [42 U.S.C.A. § 2000e-5]. Since the Colorado statute and the State commission so come within the terms of section 706(b) of the Act, no charge can be filed with the EEOC under section 706 (a) until after the expiration of sixty days after proceedings are commenced in the State, unless the State proceedings terminate within such time. Further the Act in section 706(d) [42 U.S. C.A. § 2000e-5(d)] provides that filing with the EEOC must be made under these circumstances within two hundred ten days after the alleged unlawful employment practice occurred, "or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, * * *."
 
 
 13
 The trial court found, and the record shows, that the Colorado commission terminated its proceedings on plaintiff's complaint on July 30, 1965, and so notified him. We also agree that this second period of consideration was an effective reopening of prior proceedings on the same complaint. Thus if appellant had filed his complaint with the EEOC within thirty days thereafter there would be no question as to its authority to act on such a complaint. Appellant did not do so but waited until some time later and mailed a letter of complaint to the EEOC.
 
 
 14
 The appellant, and the EEOC as amicus curiae, argue here that this letter to the EEOC started a new chain of events, and they ignore the prior failure by appellant to comply with the time requirements. The EEOC, to sustain this position, urges that upon receipt of a complaint letter directly from an individual as the appellant here, it may hold it in some sort of suspense and "advise" the State commission concerned. Then at the end of the period the State has to consider complaints (sixty days) the commission can then automatically "assume jurisdiction," as if the complaint had been made directly to the State agency and, thereafter within the time limit, filed with the commission.
 
 
 15
 As indicated above, we must affirm the trial court in its holding that the time limit was ignored as to the complaint appellant himself filed with the Colorado commission. We also hold that the device used by the EEOC to start a new time sequence was ineffective to do so. Under the Act, when the appellant's letter to the EEOC was received it was thereby filed as the filing date cannot be manipulated by the commission. Its own regulations state "* * * a charge is deemed filed when the Commission receives from the person aggrieved a written statement sufficiently precise to identify the parties and to describe generally the action or practices complained of." The charge was apparently definite enough for the EEOC to advise the Colorado commission although the record does not show how this was done. The EEOC in its brief also states: "It is established beyond question that a charge, originally in the form of a letter, may later be reduced to proper form, and that the later official charge will relate back to the date of the letter." Thus the charge here concerned was filed when received, and at that time the EEOC had no authority over the matter because it had then not yet been presented to the Colorado commission.
 
 
 16
 In International Bhd. of Elec. Workers, Local Union No. 5 v. United States Equal Employment Opportunity Comm., 398 F.2d 248, the Third Circuit held that a charge when filed with the EEOC before the expiration of the State's sixty day period was not then valid. The same situation here prevails because appellant's charge was filed with the EEOC before Colorado had a chance to act on it. The court in I.B.E.W. however found a subsequent charge filed within the statutory time intervals and sequence was valid and within the two hundred ten day period.
 
 
 17
 The trial court in the case at bar also had no statutory power to hear the case because the EEOC also lacked such authority. The trial court so held. See Washington v. Aerojet-General Corp., 282 F.Supp. 517 (C.D.Calif.), where the date of receipt and the date of filing were also considered.
 
 
 18
 The Civil Rights Act of 1964 is precise in its requirements that the States with adequate statutes and machinery have the first opportunity to consider complaints. This first opportunity is a clear requirement in the sequences set out in the Act. This opportunity cannot come by an advice from the EEOC that a complaint has already been filed with it. This practice seeks to channel complaints first to the EEOC which then "advises" the State agency, gives it sixty days, and then the EEOC automatically proceeds. The statute does not contemplate this procedure.
 
 
 19
 In the case before us the record does not show what the EEOC advised the Colorado commission nor how it did so. We have only the Colorado commission's response. This response, as mentioned above, noted that appellant had requested nothing further of the State commission, indicated that appellant was perhaps disappointed in it, and asked the EEOC to proceed. This reference shows, of course, that the same complaint theretofore presented to the Colorado commission was recognized. Thus this is not an instance where the State agency was unfamiliar with the complaint. Its letter of June 1, 1966, indicates that appellant was expected to return. We don't of course know whether other action would have been taken had appellant returned to it and presented another complaint. The deposition of the State director only states that the policies were undergoing substantial changes at the time. After careful consideration we cannot on this record say that submission to the Colorado commission by appellant would have been wholly futile.
 
 
 20
 We must thus apply the procedure and the time limits set by Congress which are explicit in the statute. The language is clear and needs no interpretation. However, there were important reasons set out in the legislative history as to why the complaints must first be filed with the State agency when the State statute contains the required provisions. 110 Cong.Rec., part 10, 13008 and 12721 (1964), 88th Cong.2d Sess. The debates in Congress include a variety of views as to several sections of the Act, especially the provisions relating to conciliation; however, the sequence of State and federal action was debated with little or no evidence of a difference of opinion as to the meaning of the provisions proposed. It became a fundamental issue, and the subject of a significant compromise; thus the legislative history is also clear if it need be considered.
 
 
 21
 The court in Equal Employment Opportunity Comm. v. Union Bank, 408 F.2d 867 (9th Cir.), held that the mandate is evident that the claimant must first proceed "under available state law before filing a charge with the EEOC." The time limitation for filing with the EEOC follows to permit the federal agency thereafter to consider the matter. For reasons Congress fully considered, the reference of complaints to the federal agency comes after their consideration by the States. See also Edwards v. North American Rockwell Corp., 291 F. Supp. 199 (C.D.Calif.).
 
 
 22
 In order to preserve this stated sequence and the statutory thirty day period in which to invoke federal agency authority, the holding must be that the appellant waited too long after final State action to take the matter to the EEOC, and thus the federal agency did not have authority to act, nor did the trial court.
 
 
 23
 The sequence and the time period is applicable under the statute to all types of allegedly unlawful discrimination. It does not differentiate between continuing discrimination and isolated incidents. The familiar "continuing violation" argument advanced by appellant and the EEOC would permit a complaint to be initially filed with it at any time whatever as to a continuing offense, and the elements of the Act considered above would thereby be destroyed.
 
 
 24
 Affirmed.
 
 
 
 Notes:
 
 
 *
 Of the United States Court of Appeals for the District of Columbia Circuit, sitting by designation
 
 
 
 25
 FAHY, Senior Circuit Judge (dissenting).
 
 
 26
 As the court points out, the trial court found the reopened 1965 case was terminated by the State Commission in July of that year. No complaint was filed with the Equal Employment Opportunity Commission within thirty days thereafter. It follows, I agree, that § 706(d) (42 U.S.C.A. § 2000e-5(d)) was not complied with, insofar as the reopened 1965 case is concerned. However, on May 23, 1966, as the court also points out, appellant sent a letter complaint to EEOC. Since the discrimination of which he had complained to the State Commission, and now complained to EEOC, was of a character which continued to the time of the filing, this complaint, if it were handled so as to meet the procedural requirements of the Act, initiated a new case.
 
 
 27
 To recognize that some discrimination is of a continuing character is not to say that repetitious complaints or reopenings may be unlimited. An administrative agency, as well as a court, has the power to prevent abuse of its process. But I find no such abuse here, just as this court found none when it accepted as valid an oral renewal in 1965 of Love's formal complaint made before the State Commission in 1963. In fact, our court now comments that had appellant filed his present complaint with EEOC within thirty days after he was notified that his 1965 complaint to the State Commission was terminated "there would be no question as to the (EEOC's) authority to act on such a complaint." The court makes no mention, however, of the requirement in § 706(d) (42 U.S. C.A. § 2000e-5(d)) that a valid complaint to EEOC, if a state commission has taken jurisdiction, must be made within 210 days after the alleged employment practice occurred or within 30 days after receiving notice of the termination of state proceedings, whichever is earlier. If Love's renewed complaint before the State Commission in 1965 was not justified by a continuing discrimination, any complaint to EEOC at this later time would clearly have been filed more than 210 days after the alleged unlawful employment practice which led to the 1963 complaint.
 
 
 28
 The absence of abuse is further evidenced by the acquiescence of all the parties in the propriety of the present proceedings as they went forward before EEOC. That agency treated the complaint of May 23, 1966 as a new complaint or renewal of an earlier one, not as an untimely effort to confer jurisdiction upon EEOC after the termination of earlier proceedings. Perhaps even more significantly, it was so treated by the State Commission itself. Furthermore, in the ensuing proceedings before EEOC, the Pullman Company also so treated it. It was only after EEOC had itself terminated the case initiated by the May 23, 1966 complaint and Love timely went to the District Court that the Pullman Company raised there the objection now accepted by our court.
 
 
 29
 It is apparent that the complaint of May 23, 1966 cannot be considered an abuse of the statutory scheme. This court nevertheless holds that EEOC's referral of this complaint to the State Commission was not compliance with § 706(b) (42 U.S.C.A. § 2000e-5(b)). The court correctly observes that § 706 (b) requires a complaint of employment discrimination to be filed before a state commission, if one exists, before it is to be considered by EEOC. To meet this requirement of the Act, EEOC adopted the practice of referring a charge, mistakenly filed initially with it, to the appropriate state agency, EEOC subsequently assuming jurisdiction.[1] The authority of EEOC to make such referrals has been embodied in an amendment of Regulation § 1601.12 (F.R.Doc. 68-13553, eff. Nov. 7, 1968):
 
 
 30
 The aggrieved party shall be notified, in writing, that the document which he sent to the Commission has been forwarded to the state or local agency pursuant to the provisions of § 706 (b), and that unless the Commission is notified to the contrary, on the termination of state or local proceedings, or after 60 days have passed, whichever comes first, the Commission will consider the charge to be filed with the Commission and commence processing the case.
 
 
 31
 This regulation was not in effect when EEOC referred Love's complaint to the State Commission, but, as indicated above, it merely formalized the earlier Commission procedure. That procedure, conforming to the statutory scheme, has been accepted, without being questioned, by the Third Circuit in International Bhd. of Elec. Workers, Local Union No. 5 v. EEOC, 398 F.2d 248 (3rd Cir. 1968). In that case, as in ours, a charge of discrimination was originally filed with EEOC, which referred the complaint to the state agency. The charging party never made a formal complaint directly to the state agency. The court nevertheless tacitly found compliance with § 706(b). EEOC had proceeded upon the original complaint after a subsequent request by the complaining party that it assume jurisdiction.
 
 
 32
 EEOC's past procedure and present regulations do not run counter to the policy of the Act. On the contrary, as the regulations state, "it is the intent of the Commission to thereby encourage the maximum degree of effectiveness in the state and local agencies."[2] Yet, with no mention of the current regulations, the court rules inconsistently with them, and in my view thus unduly restricts the right of EEOC to entertain and expedite claims for which it has responsibility under the Act to seek a solution. I think we should keep in mind that,
 
 
 33
 [w]e are not dealing with businessmen-plaintiffs or plaintiffs accustomed to consulting lawyers about their rights. This law is a remedial one, and the Congressional purpose would not be furthered by making plaintiffs of the kind with which we are concerned, members of the working class who are generally without substantial higher education, dot every "i" and cross every "t" on the way to the courthouse.[3]
 
 
 34
 The consistency of the EEOC procedure with the policy of the Act is emphasized by the facts of this case. The Colorado Commission, as a result of the 1963 and 1965 complaints, fully considered Love's complaint before EEOC was even aware of its existence. The State Commission had been unable to obtain an arrangement satisfactory to the parties, and, accordingly, terminated its proceedings. These unsuccessful efforts of the State Commission led Love to go to EEOC for relief. EEOC, in order to bring the matter within the statutory plan, that is, to enable the Colorado Commission to have the fullest opportunity to consider the complaint initially, referred it to that Commission. Because of the Colorado Commission's acquaintance with the Love grievance and with his dissatisfaction with the result of its efforts, it informed EEOC that it would waive jurisdiction over the matter. Only at this point did EEOC assume jurisdiction. I think it was entitled to do so, and that after the termination of its proceedings the District Court obtained jurisdiction by the timely filing of suit by Love — that Love then came to the door of the court with quite valid credentials.[4] Accordingly, I respectfully dissent in appeal No. 209-69 from the court's affirmance of the District Court's order dismissing Love's complaint.[5]
 
 
 
 Notes:
 
 
 [1]
 G.C. Opin. 11/18/65 & 12/2/65; Comm. Dec. 12/30/65
 
 
 [2]
 Reg. § 1601.12,supra.
 
 
 [3]
 Antonopulos v. Aerojet-General Corp., 295 F.Supp. 1390, 1395 (E.D.Cal.1968)
 
 
 [4]
 I do not read International Bhd. of Elec. Workers, Local Union No. 5 v. EEOC,supra, as does the court. Moreover, it should be noted that Washington v. Aerojet-General Corp., 282 F. Supp. 517 (C.D.Cal.1968), also cited by the court, relied upon the case in the District Court which was reversed by the Third Circuit in the IBEW case, supra. See footnote 9, 282 F.Supp. at 522. And EEOC v. Union Bank, 408 F.2d 867 (9th Cir. 1969), also cited, does not oppose the position I take; for there the matter seems never to have been before the State agency at all.
 
 
 [5]
 The cross-appeal of the Pullman Company, before us in appeal No. 226-69, takes issue with the District Court's ruling that the proceedings before the Colorado Commission were validly reopened in 1965, a ruling with which this court agrees. It is unnecessary for me to take a position on this matter since in any event I conclude that the complaint of May 23, 1966, validly set in motion proceedings which led to the timely filing by Love of his complaint in the District Court which in my opinion gave that court jurisdiction
 
 
 
 35
 Before LEWIS, Chief Judge, FAHY, Senior Circuit Judge*, and SETH, Circuit Judge.
 
 
 36
 SETH, Circuit Judge.
 
 
 Opinion on Rehearing
 
 
 37
 The Equal Employment Opportunity Commission argues for the first time on this rehearing the relationship of the effective date of Title VII of the Civil Rights Act of 1964 to the procedural and jurisdictional events. Title VII became effective on July 2, 1965, which was a date during which the Colorado Civil Rights Commission was attempting to provide some relief or remedy for the appellant. The record shows that the Commission discussed the complaint with The Pullman Company and advised Love that he could be promoted to the position of conductor, but under the existing Union contracts, his seniority as a conductor would be so low that he probably would be laid off. This was not a satisfactory prospect for appellant. This date, July 30, 1965, was determined by the trial court to be the termination date by the State authorities, and thus appellant's time for application for relief to the EEOC then began to run.
 
 
 38
 The EEOC on this rehearing now urges that the pre-July 2, 1965, event be disregarded as being ineffective as antedating Title VII. We agree with this position, but it does not materially alter the consideration of the events.
 
 
 39
 The termination by the Colorado Commission on July 30, 1965, could only have been of proceedings which related to events, conditions, or acts which took place before the effective date of the Act, and insofar as these asserted acts of discrimination they could not have been within the jurisdiction of the EEOC. Crosslin v. Mountain States Telephone & Telegraph Co., 422 F.2d 1028 (9th Cir.); Nishiyama v. North American Rockwell Corp., 49 F.R.D. 288, U.S.D.C., Cent.Dis. Calif.; Griggs v. Duke Power Co., 292 F.Supp. 243 (M.D.N.C.); Dobbins v. Local 212, Int'l Bhd. of Elec. Workers, A. F. L.-C. I. O., 292 F.Supp. 413 (S.D.Ohio); Banks v. Local Union 136, Int'l Bhd. of Elec. Workers, 296 F.Supp. 1188 (N.D. Ala.).
 
 
 40
 Thus the first post effective date that events could have been considered under the record before us were those referred to in the letter of complaint of May 23, 1966, sent by appellant directly to the EEOC. This was the letter the Commission did not file but suspended until the Colorado Commission was advised and a reply received on June 1, 1966. Then according to the arguments and briefs of the EEOC it "* * * automatically accepted the charge for filing." This determination of the time for filing was made by the Commission without further correspondence from the appellant as apparently later became the procedure, as described in the prior opinion of this court. International Bhd. of Elec. Workers Local Union No. 5 v. United States Equal Employment Opportunity Comm., 398 F.2d 248 (3d Cir.).
 
 
 41
 The regulations of the Commission did not contemplate or permit such a manipulation of the filing date and it is contrary to uniform practice before Governmental agencies. We are strongly urged to consider regulations adopted at a later date, but this cannot be done, even if the method could be regularized by the adoption of regulations.
 
 
 42
 It must be pointed out that if complaints of this nature are so received by the EEOC but not "filed" until a reply is received from a State agency or until sixty days have elapsed, it is entirely possible and even likely that the time for appeal of the person complaining may have elapsed by reason of prior termination by State authorities. Under these circumstances, the EEOC to save the appeal would have to "file" the complaint at a date much earlier than the day on which the situation became known to it. The post-date filings made "automatically" by the EEOC as described on this appeal have little to recommend them over pre-dating the "filings" to a date before the day such act was accomplished.
 
 
 43
 The EEOC here argues that it need only advise the State agency of the complaint. In its brief it states that section 706(b) "* * * requires only that a state agency be given notice of the claim and 60 days in which to deal with it before the EEOC may assume jurisdiction over the case * * *," and elsewhere that the requirements are met if it "* * informs the state agency of the pendency of a charge * * *." This without further word or act by the complainant to permit the EEOC to then "automatically" assert jurisdiction after sixty days does not comply with the Act as described in the prior opinion.
 
 
 44
 The action of the trial court in treating appellee's motion as one for summary judgment and the granting of the motion is affirmed for the reasons stated in this opinion on rehearing and as set forth in the prior opinion.
 
 
 45
 Affirmed.
 
 
 
 Notes:
 
 
 *
 Of the United States Court of Appeals for the District of Columbia Circuit, sitting by designation
 
 
 
 46
 LEWIS, Chief Judge (concurring).
 
 
 47
 I concur in the affirmance of this judgment on its record facts for to do otherwise would give judicial approval to administrative "flexible" filing to obtain, postpone, or reject jurisdiction. Admittedly those persons seeking relief under the Act are usually uninformed as to procedural necessities, often present their problem in letter form and directly to the Commission, and so need regulatory or legislative protection to preserve their basic rights against unnecessary procedural bars. But this problem is not unique with this Commission and its solution certainly does not lie in the approval of the manipulated procedures reflected in this record. To do so might well, under different facts, penalize compliance as well as reward noncompliance with the requirements of the Act.
 
 FAHY, Senior Circuit Judge (dissenting):
 
 48
 With a modification to be mentioned I adhere to the views expressed in my dissenting opinion filed September 22, 1969. In light of the fact that Title VII of the Civil Rights Act of 1964 did not become effective until July 2, 1965, I agree with the opinion of the court on rehearing that the correct basis for deciding that the Equal Employment Opportunity Commission did not have jurisdiction of the reopened 1965 case is that the conduct complained of occurred prior to July 2, 1965, rather than as stated in my dissent of September 22, 1969.