Marina **VOUTSIS**, Plaintiff-Appellant,

v.

**UNION CARBIDE CORPORATION,**
Defendant-Appellee.

No. 175, Docket 71–1359.

United States Court of Appeals, Second Circuit.

Argued Oct. 26, 1971.

Decided Dec. 3, 1971.

---

Arthur S. Olick, New York City (David S. Lande, Kreindler, Relkin, Olick & Goldberg, New York City, of counsel), for plaintiff-appellant.

William C. Treanor, New York City (Richard P. Lawlor, New York City, of counsel), for defendant-appellee.

John deJ. Pemberton, Jr., Deputy Gen. Counsel, Washington, D. C. (Stanley P. Hebert, Gen. Counsel, Julia P. Cooper, Chief, Appellate Section, John F. Goemaat, Atty., E.E.O.C., Washington, D. C., of counsel), for intervenor Equal Employment Opportunity Comm.

Before LUMBARD, FEINBERG and OAKES, Circuit Judges.

OAKES, Circuit Judge.

Appellant, Marina Voutsis, a former employee of appellee, Union Carbide, appeals from the dismissal of her complaint charging appellee with sex discrimination. The summary judgment dismissal was for failure to state a claim because appellant had filed her complaint with intervenor United States Equal Employment Opportunity Commission (hereinafter EEOC) too *soon*, that is, before the expiration of the 60-day period prescribed for deferral to state administrative and judicial proceedings in 42 U.S.C. § 2000e–5(b), and on the further ground that she had foreclosed federal action by electing to pursue her state remedies by entering into, and was bound by, "a settlement" with Union Carbide in the state proceedings. The opinion below, reaffirmed in a rehearing and reported at 321 F.Supp. 830, 834 (S.D.N.Y.1970), relied on Washington v. Aerojet-General Corp.,

282 F.Supp. 517 (C.D.Cal.1968), and on Love v. Pullman Co., 430 F.2d 49, aff'd on rehearing, 430 F.2d at 56–58 (10th Cir. 1970), cert. granted, 401 U.S. 907, 91 S.Ct. 873, 27 L.Ed.2d 805 (1971).

The act of Congress here involved is Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the "Equal Employment Opportunities" subchapter of the Act. The enforcement provisions of the Act contained in Section 706, 42 U.S.C. § 2000e–5(b), provide in pertinent part:

In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (a) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated.

· · ·

The rather stormy Senate debate[1] leading up to the passage of the Act made it plain that, as a compromise,[2] Congress

---

[1] See, *e. g.*, statement of Senator Richard Russell, quoted in 2 Schwartz, Statutory History of the United States: Civil Rights 1146 (1970) (hereinafter cited as Schwartz): "They [the Commission inspectors] would be in the office of every businessman in this country, harassing and spying and prying into his individual business." Or, see statement of Senator John Tower, quoted in Schwartz at 1298: "The FEPC would subject a great part of American industry to bureaucratic whims, prejudices and caprices to a degree never before contemplated."

[2] See statement of Senator Joseph Clark, quoted in Schwartz at 1328–29:

First I wish to state my own candid political judgment, which is that if we want any bill at all enacted, we must take the Dirksen amendment. . . . The able, articulate, and indefatigable

Members of the Senate who are opposed to any civil rights bill, and who have been filibustering the civil rights bill . . . are indeed tireless. . . . Since I wish a bill, and want the bill desperately, I have concluded to swallow my doubts and disappointments and to support the compromise. . . .

Senator Everett Dirksen had previously complained:

What a layering upon layer of enforcement. What if the court orders differed in their terms or requirements? There would be no assurance that they would be identical. Should we have the Federal forces of justice pull on the one arm, and the State forces of justice tug on the other? Should we draw and quarter the victim?

Schwartz at 1177.

The compromise, which was worked out in conferences between Senators Dirksen,

was seeking "to give States . . . a reasonable opportunity to act under State law before the commencement of any Federal proceedings by individuals who alleged discrimination." [3] A search of the debates, however, has failed to shed any light on the question whether the words "no charge may be filed" were intended to be construed literally as the trial court felt bound to do, or whether a more reasonable construction was intended, requiring only that federal authorities defer to state proceedings for a limited period of time in order to give the state or local agency "an opportunity to handle the problem under State or local law." [4]

We agree with Judge Fahy, dissenting in Love v. Pullman Co., *supra*, 430 F.2d at 54, and with District Judge MacBride, in Antonopulos v. Aerojet-General Corp., 295 F.Supp. 1390, 1395 (E.D.Cal. 1968), that the intent of Title VII is remedial and that plaintiffs under it should not be held accountable for a procedural prescience that would have made a Baron Parke happy or a Joseph Chitty proud. *See also* Local 5, IBEW v. EEOC, 398 F.2d 248, 249 (3rd Cir. 1968), cert. denied, 393 U.S. 1021, 89 S. Ct. 628, 21 L.Ed.2d 565 (1969).

■ Our conclusion that the complaint was properly filed pursuant to the statute is made easier by the EEOC regulation.[5] Under the regulation, a copy of a complaint filed prematurely with the Commission is promptly transmitted to the appropriate local or state agency,[6] while the complaint itself is held by the EEOC until termination of the local or state proceedings or the lapse of the 60-day statutory waiting period, whichever occurs first, and then it is considered to be filed. An interpretation of this nature, made by the agency charged with Title VII enforcement, is to be accorded considerable deference by the courts. Griggs v. Duke Power Co., 401 U.S. 424, 433–434, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); see Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L. Ed.2d 616 (1965); Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796 (1933). As was said in a case involving Title II (Public Accommodations) of the 1964 Act, Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 401, 88 S. Ct. 964, 966, 19 L.Ed.2d 1263 (1968), "When the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law." To place an unnecessary stumbling block in the private litigant's path, particularly when the national enforcement agency has carried out the federal mandate of accommodation to state action, would be hypertechnical and overly legalistic,[7] and would improperly shield a discriminatory organization from the reach of civil litigation. *Cf.* Rosen v. Public Service

---

Mansfield, Kuchel and Humphrey (Schwartz at 1332), made parallel "important changes" in the enforcement provisions of Title II (Public Accommodations) and Title VII. See statement of Senator Hubert Humphrey quoted in Schwartz at 1334.

3. Statement of Senator Hubert Humphrey quoted in Schwartz at 1334.

4. Statement of Senator Hubert Humphrey quoted in Schwartz at 1347; *see also* 110 Cong.Rec. 12725 (1964).

5. 29 C.F.R. § 1601.12.

6. Here plaintiff filed a similar charge with the state agency before coming to the federal agency so that it was, strictly speaking, not necessary to transmit a copy to the state agency; apparently one was transmitted nevertheless.

7. Lack of verification in a complaint under Title VII has been held to be a technical rather than a jurisdictional defect. Choate v. Caterpillar Tractor Co., 402 F.2d 357, 360 (7th Cir. 1968). An informal letter has been held to constitute a charge under Title VII filed within the time limitation period. Georgia Power Co. v. EEOC, 412 F.2d 462, 466 (5th Cir. 1969).

Electric & Gas Co., 409 F.2d 775, 781 (3rd Cir. 1969).[8]

■ Nor do we find that appellant elected to pursue state remedies exclusively by entering into a "settlement" with the employer in the state action. In the "settlement" of August 12, 1969, appellee agreed to "offer to the complainant within 30 days after the date of this stipulation the opportunity to accept employment in a non-exempt, non-routine administrative position with higher pay points and a higher salary level conforming to similar assignments within Union Carbide . . . ." This vague "settlement" left open a number of questions—e.g., what is a "non-routine administrative position"—which have yet to be finally answered in the New York State proceedings, despite two appeals and an elapsed time of more than two years. State Division of Human Rights v. Union Carbide Corp., 35 A.D.2d 664, 315 N.Y.S.2d 401 (1st Dep't 1970) ; State Division of Human Rights v. Union Carbide Corp., 34 A.D.2d 636, 310 N.Y.S.2d 396 (1st Dep't 1970). We understand that the case is again before the Division of Human Rights, on remand from the Appellate Division, for the purpose of making a record appropriate for judicial scrutiny.

8. Most other federal courts that have faced the problems of deferral and technical procedures agree with our flexible interpretation. See, e. g., Local 5 IBEW v. EEOC, 398 F.2d 248, 249, 252 (3rd Cir. 1968), cert. denied, 393 U.S. 1021, 89 S.Ct. 628, 21 L.Ed.2d 565 (1969) ; Nishiyama v. North American Rockwell Corp., 49 F.R.D. 288, 291 (C.D.Cal. 1970) ; Fix v. Swinerton & Walberg Co., 320 F.Supp. 58, 59 (D.Colo.1970) ; Bremer v. St. Louis S.W.R.R., 310 F. Supp. 1333, 1338–1339 (E.D.Mo.1969) ; Vigil v. American Tel. & Tel. Co., 305 F.Supp. 44, 46 (D.Colo.1969) ; Everett v. Trans-World Airlines, 298 F.Supp. 1099 (W.D.Mo.1969). Only the other day this court read the procedural provisions of the Social Security Act broadly, avoiding a hypertechnical interpretation of that statute. Widermann v. Richardson, 451 F.2d 1228 (2d Cir. Nov. 10, 1971).

■ The Congressional policy here sought to be enforced is one of eliminating employment discrimination, and the statutory enforcement scheme contemplates a resort to the federal remedy if the state machinery has proved inadequate. The federal remedy is independent and cumulative, cf. Vaca v. Sipes, 386 U.S. 171, 177–180, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), and it facilitates comprehensive relief. Oatis v. Brown Zellerbach Corp., 398 F.2d 496, 498 (5th Cir. 1968) (class action permissible). While plaintiff may ultimately achieve some individual relief in the state proceedings which might bar her from duplicate relief here, Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 715 (7th Cir. 1969), the federal claim allows the district court to conduct a "full scale inquiry into the charged unlawful motivation in employment practices." Jenkins v. United Gas Corp., 400 F.2d 28, 33 (5th Cir. 1968), and to award broad relief, perhaps for the entire class of employees of which appellant is a member.[9] See Section 706(a), 42 U.S.C. § 2000e–5(a) (". . . the Commission shall endeavor to eliminate any such alleged unlawful employment practice . . .") (emphasis supplied), and Section 706(g), 42 U.S.C. § 2000e–5(g) (". . . the court may . . .

Washington v. Aerojet-General Corp., 282 F.Supp. 517 (C.D.Cal.1968), a contrary decision, relied upon by the district court below, in turn relied upon a 1965 opinion of the General Counsel of the EEOC. That opinion has long since been rendered obsolete by the Commission regulations referred to in this opinion; in addition such an opinion is not to be considered, according to the EEOC itself, a "written interpretation or opinion of the Commission" under Section 713(b) of Title VII, 42 U.S.C. § 2000e–12(b). 35 Fed.Reg. 18692 (1970). Moreover, the same district judge who decided Washington clarified it in Nishiyama, supra, favorably noting Vigil, supra, which closely parallels this case.

9. See Jenkins v. United Gas Corp., 400 F.2d 28, 30, 32–33 (5th Cir. 1968). The allegations of plaintiff's complaint are phrased in class terms.

894

order such affirmative action as may be appropriate . . .". The "harsh" and "technical" procedural rule of election of remedies, Great American Insurance Co. v. Merchants & Manufacturers Mutual Insurance Co., 423 F.2d 1143, 1146 (6th Cir. 1970), is not applicable to a Title VII civil rights plaintiff, because the purposes underlying enactment of that Title were clearly based on the congressional recognition that ". . . state and local FEPC laws vary widely in effectiveness. In many areas effective enforcement is hampered by inadequate legislation, inadequate procedures, or an inadequate budget. Big interstate industry cannot effectively be handled by the States." [10] The system of remedies is a complementary one, with the federal remedy designed to be available after the state remedy has been tried without producing speedy results.

■ We also agree with the conclusion of the Fifth, Sixth and Eighth Circuits that the doctrines of *res judicata* and *collateral estoppel* do not bar appellant as a matter of law. Tipler v. E. I. DuPont deNemours & Co., 443 F.2d 125 (6th Cir. 1971) (prior determination by NLRB); Taylor v. Armco Steel Co., 429 F.2d 498 (5th Cir. 1970) (judicial determination prior to Civil Rights Act); Hutchings v. United States, 428 F.2d 303 (5th Cir. 1970) (arbitration award); Norman v. Missouri Pacific R. R., 414 F.2d 73 (8th Cir. 1969) (judicial determination under Railway Labor Act). *But see* Dewey v. Reynolds Metals Co., 429 F.2d 324 (6th Cir. 1970), aff'd per curiam without opinion, 402 U.S. 689, 91 S.Ct. 2186, 29 L.Ed.2d 267 (1971) (4–4 decision) (arbitration award interpreting collective bargaining contract).[11]

We express no opinion, however, on the question whether appellant could,

without the federal commission's consent, bind herself to a settlement after filing her federal complaint. *Cf.* D. A. Schulte, Inc. v. Gangi, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114 (1946); see 29 C.F.R. § 1601.9 (EEOC consent required to withdraw suit). Suffice it to say here that no settlement has been effectuated with or without EEOC consent.

We reverse and remand, with instructions to the district court to proceed in an expeditious manner in accordance with this opinion.

10. Statement of Senator Joseph Clark, quoted in Schwartz at 1290. And see the statement of Senator Hubert Humphrey who, in explaining the changes in the Dirksen-Mansfield compromise, said: "Moreover, section 706(d) is carefully worded to protect an individual who, in good faith, unnecessarily seeks to comply with the requirement of initial resort to

State or local authority." Schwartz at 1352.

11. Cases such as Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940), relied upon by appellee, involve private rights in ordinary civil actions, not the public policy of Title VII.