**Dr. Betty AL–HAMDANI, Plaintiff,**

v.

**STATE UNIVERSITY OF NEW YORK, and its Agent, Dr. Ernest L. Boyer, Chancellor, State University of New York at Buffalo and its Agent, Dr. Robert L. Kettler, President, Defendants.**

No. Civ–76–283.

United States District Court, W. D. New York.

Oct. 5, 1977.

Bonnie P. Strunk, Syracuse, N. Y., for plaintiff.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, Albany, N. Y. (Michael F. Colligan, Asst. Atty. Gen., Albany, N. Y., of counsel), for defendants.

CURTIN, Chief Judge.

This is an employment discrimination case in which the plaintiff alleges that the defendants have discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1983, and the fourteenth amendment. The defendants have moved for summary judgment on the following grounds: res judicata, statute of limitations, lack of subject matter jurisdiction, lack of jurisdiction over the defendants, insufficient service on defendants Townsend and Elliot, failure to state a claim, and failure to obtain the requisite permission to sue the defendants.

In an order dated July 1, 1977, the court dismissed the suit against defendants Townsend and Elliot for insufficient service. It also ruled that the plaintiff's claims under 42 U.S.C. §§ 1981 and 1983 were barred by the statute of limitations. The remaining grounds raised by the defendants in their motion are now before the court. For the reasons stated below, the defendants' motion is denied in its entirety.

The plaintiff, Dr. Betty Al-Hamdani, accepted a three-year appointment as an associate professor in art history at the State University of New York at Buffalo. Her term began September 1, 1967, and was scheduled to end on June 30, 1970. During the 1968–1969 term, the Art Department considered her for a tenured position but she was rejected. Accordingly, her position with the University terminated at the expiration of her three-year term.

In July 1970, the plaintiff filed a complaint with the New York State Division of Human Rights [State Division], alleging that she was denied tenure on the basis of her sex. After a hearing, the State Division dismissed her complaint. On appeal, the Human Rights Appeals Board affirmed the order of dismissal. The plaintiff then instituted an Article 78 proceeding in the Appellate Division of the Supreme Court of New York to review the determination of the State Division and the Appeals Board. In an order dated November 29, 1973, the Appellate Division, Fourth Department, affirmed the State Division's order as supported by substantial evidence. The plaintiff did not appeal.

On January 18, 1973, the plaintiff filed a similar complaint with the Equal Employment Opportunity Commission [EEOC], alleging that she was denied tenure on the basis of her sex. The complaint was dismissed on the ground that Title VII of the Civil Rights Act, prior to its amendment in 1972, did not apply to educational institutions.

The plaintiff then wrote a letter dated February 2, 1973 to Dr. Robert L. Kettler, the President of the University, requesting reinstatement on a permanent basis. The President responded, stating that " . . . this matter has been through a series of reviews. Based on information available to me, I feel it would be inappropriate to consider re-appointment at this time."

After her request for reinstatement was denied, the plaintiff filed a second EEOC charge on April 3, 1973, alleging that the University's refusal to reinstate her was based on her sex. The EEOC investigated the charge and, in a decision dated November 26, 1975, found reasonable cause to believe that the University had engaged in an

unlawful employment practice in refusing to reinstate the plaintiff. The EEOC issued a right to sue letter, and the plaintiff commenced the present action.

In her complaint, Dr. Al-Hamdani alleges that she was denied tenure on the basis of her sex, and that the University has engaged in a policy and practice of sex discrimination in hiring and tenuring female faculty members. Although the complaint does not specifically allege that she was denied reinstatement in 1973 on the basis of her sex, it shall be so construed by the court in accordance with Federal Rule 8(f) of Civil Procedure.

## I.

■ Until 1972, educational institutions were exempted from coverage under Title VII, Pub.L. 88–352 § 702 (1964). It was not until the 1972 Amendments to the Civil Rights Act were enacted that those employed by institutions of higher education could avail themselves of the remedies provided in Title VII, Pub.L. 92–261 (1972). The first question therefore presented by the defendants' motion is whether the plaintiff, whose employment with the University terminated in 1970, has stated a Title VII claim under the 1972 Amendments.

In *Weise v. Syracuse University*, 522 F.2d 397 (2d Cir. 1975), the Second Circuit held on virtually identical facts that the plaintiffs had alleged Title VII claims. In that case, two female teachers sued Syracuse University for sex discrimination. Both had been terminated prior to March 24, 1972, the effective date of the 1972 Amendments. In 1973, both requested and were denied reconsideration of their terminations. The court found that the 1972 Amendments did not apply retroactively to discriminatory acts occurring before March 24, 1972. 522 F.2d at 411–12. But the court held that both plaintiffs had alleged independent acts of discrimination occurring after the University lost its exemption from Title VII. The court stated:

> We think that the Act's sweep is sufficiently broad to include within the defini-

tion of discrimination with respect to terms, conditions or privileges of employment, a discriminatory refusal, in violation of the employer's own established internal procedures, to reconsider an employee's termination.
522 F.2d at 409-10.

The defendant correctly insists that the University's refusal to reinstate the plaintiff cannot revive her pre-1972 claims against the University. *Weise* makes clear, however, that the University's refusal to reinstate her in 1973 does state an independent Title VII claim, and is not a mere subterfuge for reopening her pre-1972 claims. Accordingly, the defendants' motion for summary judgment for failure to state a claim is denied.

## II.

■ Relying on *Mitchell v. National Broadcasting Co.*, 553 F.2d 265 (2d Cir. 1977), the defendants argue that the plaintiff's Title VII claim is barred by the doctrines of res judicata and collateral estoppel. In *Mitchell*, the plaintiff's discrimination claim was dismissed by the State Division, and the dismissal was affirmed by the Appellate Division of the New York Supreme Court. The plaintiff then commenced an action in federal court based on 42 U.S.C. § 1981. The Second Circuit held that the doctrine of res judicata precluded the plaintiff from re-litigating her claim in federal court.

The plaintiff, on the other hand, contends that res judicata and collateral estoppel do not apply, relying on the Second Circuit's decision in *Voutsis v. Union Carbide Corp.*, 452 F.2d 889 (2d Cir. 1971). *Voutsis* held that, in Title VII cases, initial resort to state administrative proceedings does not deprive the plaintiff of a trial de novo in federal court.

Under *Weise v. Syracuse University, supra*, the plaintiff's claim of discrimination based on the University's refusal to reinstate her is separate and independent from her claim of discrimination based on her initial tenure denial. Therefore, res judica-

ta cannot operate as a total bar to Dr. Al-Hamdani's present complaint. The real question raised by defendants' motion is whether Dr. Al-Hamdani, in proving her case in chief, is collaterally estopped from showing that her initial tenure denial was based on her sex. Since her initial tenure denial in 1969 formed the basis of the President's later refusal in 1973 to reinstate her, the resolution of this question may well be dispositive of this case.

The precise question presented here has not been resolved by the Second Circuit. Although *Weise, Voutsis,* and *Mitchell* are all highly relevant, none is strictly controlling. After a careful consideration of the question, I find that *Voutsis* governs, entitling Dr. Al-Hamdani to a trial de novo on all issues relevant to her claim of discriminatory refusal to reinstate.

Recognizing that Congress has vested final responsibility for enforcing Title VII rights in the federal courts, the Supreme Court has actively protected the claimant's right to a trial de novo under Title VII. *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (holding that submission of a claim to final arbitration does not foreclose an employee's right to a trial de novo under Title VII); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798-800, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (holding that an EEOC finding of probable cause is not a prerequisite to a Title VII action). In *Alexander,* the Court explained the relationship between Title VII remedies and other forms of review as follows:

> In the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq., Congress indicated that it considered the policy against discrimination to be of the "highest priority." *Newman v. Piggie Park Enterprises, supra,* 390 U.S. 400, at 402, 88 S.Ct. 964, at 966, 19 L.Ed.2d 1263. Consistent with this view, Title VII provides for consideration of employment-discrimination claims in several forums. . . . And, in general, submission of a claim to one forum does not preclude a later submission to another. Moreover, the legislative

history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination.

415 U.S. at 47–49, 94 S.Ct. at 1019. (footnotes omitted).

In *Voutsis,* the Second Circuit squarely rejected the application of res judicata and collateral estoppel as bars to Title VII actions in federal court after state administrative remedies had been exhausted. Explaining the unique status of Title VII claims, the court stated:

> The Congressional policy here sought to be enforced is one of eliminating employment discrimination, and the statutory enforcement scheme contemplates a resort to the federal remedy if the state machinery has proved inadequate. The federal remedy is independent and cumulative . . . and it facilitates comprehensive relief. . . . The system of remedies is a complementary one, with the federal remedy designed to be available after the state remedy has been tried without producing speedy results.

452 F.2d at 893–94.

It is true that the Second Circuit in *Mitchell* upheld the application of res judicata to a § 1981 suit in federal court following the plaintiff's appeal of the State Division's dismissal to the Appellate Division. But the court expressly reserved decision on whether res judicata would apply had the appellant brought a timely Title VII claim instead of one under § 1981. 553 F.2d at 275 n.13. In light of the strong Title VII policy of assuring de novo review in federal court, I find that *Mitchell* should not be extended to the present Title VII case.

■ That the events as to which collateral estoppel arguably applies occurred before the effective date of the 1972 Amendments does not affect the court's ruling. The plaintiff's claim, discriminatory refusal to reinstate, is nevertheless within the scope

of Title VII. *Weise v. Syracuse University, supra,* establishes that evidence of discriminatory activity occurring before 1972 is admissible in Title VII cases such as this for purposes of proving a pattern of conduct or the motive or purpose underlying post-amendment actions. *Id.* at 411, n.24.

Although the plaintiffs in *Weise* and in *Voutsis,* unlike Dr. Al-Hamdani, did not appeal the State Division's rulings to the Appellate Division, this difference should not deprive the plaintiff of a trial de novo in federal court. Under New York law, the scope of review by the Appellate Division is limited to a determination of whether the State Division's findings are supported by substantial evidence. N.Y.Exec.Law § 298 (McKinney's 1972). The state court is not given the power to conduct a trial de novo but is bound by the fact findings of the administrative agency. *Id.*

The court's ruling on the effect of Appellate Division review is supported by *Benneci v. Department of Labor, New York State Division of Employment,* 388 F.Supp. 1080 (S.D.N.Y.1975), the only reported case addressing this issue. In that case, Judge Knapp held that the plaintiff's Title VII claim could be tried in federal court even after the State Division's findings were affirmed by the Appellate Division.

Accordingly, defendants' motion for summary judgment based on res judicata and collateral estoppel is denied.

### III.

As a third ground for summary judgment, the defendants assert that the plaintiff failed to comply with one of the prerequisites of maintaining a civil action in federal court, and therefore the court lacks jurisdiction. They claim that Dr. Al-Hamdani should have filed her complaint alleging discriminatory refusal to reconsider with the State Division before filing it with the EEOC.

In *Weise v. Syracuse University, supra,* at 412, the Second Circuit rejected an identical argument, holding that an employee need not return to the state agency every time a new instance of discrimination is claimed. In this case, the plaintiff's initial filing of her complaint with the State Division in 1970 was sufficient to fulfill the requirement of exhausting state remedies.

### IV.

The defendants assert several additional grounds for summary judgment, none of which have any merit. The plaintiff has submitted sufficient proof to demonstrate the existence of a triable issue of fact. She also has shown that she has obtained the requisite permission to sue the defendants.

Defendants' motion for summary judgment is denied in its entirety.

So ordered.