**Mildred L. ANDERSON, Plaintiff-Appellee,**

v.

**METHODIST EVANGELICAL HOSPITAL, INC., Defendant-Appellant.**

**No. 71-1671.**

United States Court of Appeals, Sixth Circuit.

July 12, 1972.

Kent, Circuit Judge, dissented and filed opinion.

R. Lee Blackwell, Tarrant, Combs, Blackwell & Bullitt, Louisville, Ky., for defendant-appellant; Grover D. Adkins, Louisville, Ky., on brief; Tarrant, Combs, Blackwell & Bullitt, Louisville, Ky., of counsel.

Ernest A. Jasmin, Louisville, Ky., for plaintiff-appellee; Charles J. Lunderman, Jr., Louisville, Ky., on brief.

Before PHILLIPS, Chief Judge, KENT, Circuit Judge, and FEIKENS,[*] District Judge.

PHILLIPS, Chief Judge.

This is an appeal from a judgment for plaintiff in an employment racial discrimination case brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. We affirm.

The Hospital initially raises a jurisdictional issue, contending that the complaint to the Equal Employment Opportunity Commission was untimely. The procedural chronology is as follows: Mildred Anderson was discharged on April 29, 1967. Less than one month later she submitted an unsworn charge to the EEOC regional office in Cleveland, alleging that she was fired on account of her race. Following normal EEOC procedures, the complaint was forwarded to the Kentucky Commission on Human Rights, the State agency which administers the Kentucky counterpart to Title VII. In response to an EEOC letter, Mrs. Anderson replied in July: "I request that the Ky. Commission maintain jurisdiction until they have finished their investigation and resolved this matter, but not for a period exeeding the 120 EEOC referral." She was unsatisfied with the State disposition of her complaint and on November 28, 1967 formally requested the EEOC to take action. She executed a sworn charge about six weeks later.

The Hospital contends that the unsworn charge was premature in that it was filed prior to commencement of State proceedings and that the formal request was tardy in that it was made more than 210 days after the charged

* Honorable John Feikens, Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

discriminatory act.[1] We reject these contentions. The original charge was received by the EEOC regional office and referred to the appropriate state agency. It was not "filed" within the meaning of the Act until expiration of the referral period, at which time it became automatically filed. Submission of the original charge tolled the 210 day time limit. See Love v. Pullman Co., 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972); Vigil v. American Tel. & Tel. Co., 455 F.2d 1222 (10th Cir. 1972).

 The Hospital further urges that the findings of the District Court were unsupported by the evidence. We recognize that the record clearly shows that the Hospital's record in race relations, insofar as upper management is concerned, is exemplary. As found by the District Court:

"It should, at this point, be expressed that we do not find any facts which reflect that the defendant corporation, or its directors, or its administrators possessed any willful plan or desire to resist social justice, or wish to discriminate or have any person in its employ discriminated against. In fact, the Board of Directors and the high management of the hospital have an outstanding record in regard to fair and impartial treatment of the races."

However, where a discharge by a person in authority at a lower level of management is racially motivated, Title VII provides the aggrieved employee with a remedy. We have examined the entire record and are unable to say that the District Court was clearly erroneous in finding that Mrs. Anderson was discharged on account of her race. See R. 52(a), Fed.R.Civ.P.

Affirmed.

KENT, Circuit Judge (dissenting).

The majority recognizes that the "Board of Directors and the high management of the hospital have an out-

---

1. The time limits relied upon by the Hospital are set forth in the Act as follows:
"§ 2000e–5. Enforcement provisions.
\* \* \* \* \*
"(b) State or local enforcement proceedings; notification of State or local authority; time for filing charges with Commission; commencement of proceedings.
"In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (a) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law. . . .
\* \* \* \* \*

"(d) Time for filing charges after occurrence of unlawful practices or termination of State or local enforcement proceedings; filing of charges by Commission with State or local agency.

"A charge under subsection (a) of this section shall be filed within ninety days after the alleged unlawful employment practice occurred, except that in the case of an unlawful employment practice with respect to which the person aggrieved has followed the procedure set out in subsection (b) of this section, such charge shall be filed by the person aggrieved within two hundred and ten days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency."

Since the Kentucky Commission had been in existence less than one year at the relevant time, there was a 120 day deferral period under subsection (b).

standing record in regard to fair and impartial treatment of the races." The majority reasons, "where a discharge by a person in authority at a lower level of management is racially motivated, Title 7 provides the aggrieved employee with a remedy."

I am in entire accord with the quoted statements but not with the conclusion reached by the other members of the panel.

Mildred Anderson was discharged by Dr. Fadell, and the District Judge made an affirmative finding as follows: "I do not believe Dr. Fadell was in the slightest degree motivated by racial prejudice or bias." The District Judge thereafter found that certain subordinates of Dr. Fadell, "had *knowledge* that all was not right in paradise insofar as race relations were concerned; * * *." The District Judge found that certain of the supervisory personnel had knowledge that there was conflict between Mrs. Anderson and other employees allegedly resulting from racial bias. I am not satisfied that the findings of the District Judge justify the conclusion that the *discharge* was based upon racial bias within the meaning of Title 42 U.S.C. § 2000e–2:

"(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;"

As I read the statute it requires that the discrimination necessary to constitute an "unlawfull employment practice" must be discrimination on the part of the employer, and the District Judge in this case found affirmatively that there was no *racial bias on the part of the employer.*

I would reverse the District Court.