Ralph H. SILVER, Plaintiff-Appellant,

v.

MOHASCO CORPORATION, Edward Curren, Raymond Greenhill, Frederick Woller, Herbert Brown and James Cullen, Defendants-Appellees.

No. 1112, Docket 78–7595.

United States Court of Appeals, Second Circuit.

Argued June 7, 1979.

Decided July 18, 1979.

Jonathan I. Blackman, New York City, Cleary, Gottlieb, Steen & Hamilton, New York City, for plaintiff-appellant.

Thomas Mead Santoro, Albany, N. Y. (Bouck Holloway & Kiernan, Francis J. Holloway, Albany, N. Y., of counsel), for defendants-appellees.

Raj K. Gupta, Washington, D. C., for Equal Employment Opportunity Commission, amicus curiae.

Before KAUFMAN, Chief Judge, and OAKES and MESKILL, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

In this case, in which we are called upon to interpret Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., Learned Hand's admonition is particularly appropriate:

There is no surer guide in the interpretation of a statute than its purpose when that is sufficiently disclosed; nor any surer mark of over solicitude for the letter than to wince at carrying out that purpose because the words used do not formally quite match with it.[1]

We believe that the district court failed to attach sufficient weight to the overriding purpose of the Act.

## I

Title VII is a statute "rife with procedural requirements which are sufficiently labyrinthine to baffle the most experienced lawyer," *Egelston v. State University College at Geneseo,* 535 F.2d 752, 754 (2d Cir. 1976), not to mention a layman such as the appellant Ralph H. Silver. On August 29, 1975, Silver was discharged from his position as a senior marketing economist with appellee Mohasco Corporation. During his thirteen-month tenure, Silver, who is of the Jewish faith, came to believe he was the target of harassment by Mohasco executives because of his religious beliefs.[2] Silver alleged Mohasco wished to induce him to resign, and that he was discharged when he refused to do so.

Sometime after his discharge, Silver concluded that Mohasco's treatment of him was part of a carefully conceived plan under which Jews and other minorities were hired, harassed, and fired in a systematic fashion. This scheme, Silver believed, was designed to erect a facade of equal employment opportunity at Mohasco.

Thus, on June 15, 1976, some 291 days after his discharge, Silver wrote to the Buffalo office of the Equal Employment Opportunity Commission (EEOC). In his letter, Silver alleged that he had been hired and subsequently discharged because of his religion, and detailed the substance of his charge against Mohasco. Silver concluded by characterizing it as a "rough, incomplete and hastily drafted complaint."

Upon receiving Silver's communication, the EEOC set into motion the complex procedural machine established by Title VII. The Commission immediately forwarded the letter to the New York State Division of Human Rights (NYSDHR). Under § 706(c) of the statute, that agency must be given sixty days to process a charge before the EEOC may act.[3] Accordingly, the EEOC advised NYSDHR that it would automatically file the charge at the expiration of the

---

1. *Federal Deposit Insurance Corp. v. Tremaine,* 133 F.2d 827, 830 (2d Cir. 1943).

2. We, of course, express no view on the merits of Silver's substantive allegations of discrimination.

3. *See* Title VII of the Civil Rights Act of 1964, § 706(c), 42 U.S.C. § 2000e–5(c) [hereinafter cited as § 706(c)]:

In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law. If any requirement for the commencement of such proceedings is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purpose of this subsection at the time such statement is sent by registered mail to the appropriate State or local authority.

NYSDHR is the state agency established under N.Y.Exec. Law § 293 (McKinney 1972) to consider employment discrimination claims.

deferral period. The EEOC formally processed Silver's charge on August 20, 1976.[4]

On August 12, Silver complied with an NYSDHR request that he file a formal complaint.[5] Nineteen days later, Silver wrote to both NYSDHR and the EEOC, detailing his suspicions that Mohasco had been "blacklisting" him by supplying unfavorable references to prospective employers. On February 9, 1977, NYSDHR, without discussing the allegations of blacklisting, announced its conclusion that there was not probable cause to believe Silver had been discharged because of his religion.

At this point the proceedings shifted back to the EEOC. That agency, which had deferred any investigation of Silver's claim until NYSDHR issued its findings, adopted them as its own on August 24, 1977. Finally, in compliance with another procedural mandate of Title VII, the EEOC issued a "right to sue" letter to Silver, enabling him to pursue his charges in federal district court.[6] This he did promptly by filing his complaint on November 23, 1977. Mohasco responded by moving for summary judgment, which Judge Foley granted.[7]

Silver, the judge held, had failed to file his charge with the EEOC within 300 days of his discharge, as required by § 706(e) of Title VII.[8] Moreover, Judge Foley concluded that he could not consider Silver's allegations of blacklisting because they had not been investigated by either the EEOC or NYSDHR. We are of the view that both rulings were erroneous.

## II

The resolution of this appeal hinges on determination of the date when a charge is considered "filed" with the EEOC. This superficially simple issue is complicated by the plethora of overlapping procedural requirements that pervade Title VII. Nonetheless, we believe that much of this complexity is overcome by fidelity to the fundamental policies embodied in Title VII. Indeed, our approach accords with the rele-

---

4. The EEOC calculated the sixty-day deferral period as beginning on June 15, 1976, the day on which the Commission referred Silver's letter to NYSDHR. Under this view, the deferral period ended on August 14, 1976.

5. The district court concluded that Silver's charge was first "filed" with the state agency on this date. See Silver v. Mohasco Corp., No. 77–CV–472, slip op. at 11 (N.D.N.Y. Oct. 17, 1978). We address this contention in note 10 infra.

6. See Title VII of the Civil Rights Act of 1964, § 706(f)(1), 42 U.S.C. § 2000e–5(f)(1).

7. Silver's complaint named as defendants the Mohasco Corporation and several individual Mohasco executives. In its answer, filed December 29, 1977, the corporation acknowledged Silver's letter to the EEOC of June 15, 1976, but asserted, as an affirmative defense, that the letter was not "filed" as a matter of law on that date. On January 27, 1978, the individual defendants moved to dismiss under Fed.R.Civ.P. 12(b)(6) on the ground they did not receive proper notice of any EEOC investigation. Shortly thereafter, on February 14, the corporate defendant moved for summary judgment under Fed.R.Civ.P. 56, alleging that Silver's claim was time-barred under Title VII.

The district judge granted both motions in a single opinion filed on October 17, 1978. As to the individual defendants, we agree with Judge Foley that, because they were not notified of any EEOC investigation of their individual conduct, these defendants could not be included in Silver's complaint. See Travers v. Corning Glass Works, 76 F.R.D. 431 (S.D.N.Y.1977) (Weinfeld, J.).

8. A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

42 U.S.C. § 2000e–5(e) [hereinafter cited as § 706(e)].

vant case law, the legislative history, and the considered judgment of the EEOC.

## A.

■ The crucial importance of "filing" under Title VII stems from the mandate of § 706(e) that, when a state has created an agency to hear employment discrimination claims, a charge must be "filed" with the EEOC within 300 days of the alleged discrimination.[9] *See International Union of Electrical, Radio & Machine Workers v. Robbins & Myers, Inc.,* 429 U.S. 229, 240, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976). Unfortunately, this requirement becomes less than clear when considered together with § 706(c), which states that "no charge may be filed" with the EEOC, until sixty days after state agency proceedings have commenced.

Confronted with these two provisions, the able district court judge read § 706(c) literally. He reasoned that even when a charge is received by the EEOC well within 300 days of the alleged discrimination, it cannot be considered "filed" with that office until sixty days after referral to the state agency. Thus, according to Judge Foley, Silver's charge, albeit received by the EEOC 291 days after his discharge, was not "filed" before August 14, 1976, 352 days subsequent to the termination of his employment.[10] Accordingly, Judge Foley determined that Silver was barred by the 300-day jurisdictional prerequisite of § 706(e).

■ The district court decision would, therefore, require a Title VII complainant to file his charge with the state agency within 240 days of discharge or forfeit the opportunity to bring his complaint before the EEOC. We are of the view, however, that an informed reading of Title VII, consistent with its purpose, requires us to conclude that a charge is "filed" for purposes of § 706(e) when received, and "filed" as required by § 706(c) when the state deferral period ends.

## B.

In interpreting the filing provisions of Title VII, our lodestar must be the statute's fundamental purpose. In view of the strong federal policy in ensuring that employment discrimination is redressed, this court has consistently eschewed rigid construction of Title VII's procedural mandates. *See Egelston, supra,* 535 F.2d at 753–55; *accord, Weise v. Syracuse University,* 522 F.2d 397, 412 (2d Cir. 1975); *Voutsis v. Union Carbide Corp.,* 452 F.2d 889, 892 (2d Cir. 1971), *cert. denied,* 406 U.S. 918, 92 S.Ct. 1768, 32 L.Ed.2d 117 (1972). Accordingly, we have resisted any temptation to require technical precision of Title VII plaintiffs, who often proceed without counsel. *See Oscar Mayer & Co. v. Evans,* —— U.S. ——, ——, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979) (stressing the remedial purposes of employment discrimination statutes).[11]

Thus, it is the Supreme Court's decision in *Love v. Pullman Co.,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), that best illuminates the path we travel in arriving at our decision in this case. In *Love,* the Su-

9. If, however, a state has not created such an agency, a charge must be filed with the EEOC within 180 days after the alleged violation. *Id.*

10. Because the district court concluded that the state agency proceeding did not commence until August 12, *see* note 5 *supra,* it determined that the sixty-day deferral period could not end before October 12. *Silver v. Mohasco Corp.,* No. 77–CV–472, slip op. at 11 (N.D.N.Y. Oct. 17, 1978). We believe, however, that the state proceedings "commenced" under § 706(c) on June 15, 1976, when Silver's letter was forwarded to NYSDHR by the EEOC. That a state law may require a formal filing becomes irrelevant to a determination of when the state proceeding "commences" for purposes of the federal statute. This conclusion is compelled by the Supreme Court's recent decision in *Oscar Mayer & Co. v. Evans,* —— U.S. ——, ——, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), that a state proceeding can be "commenced" for purposes of § 14(b) of the Age Discrimination in Employment Act, 29 U.S.C. § 633(b), even after the state statute of limitations has run. Moreover, the Court concluded that this construction of § 14(b) is consistent with interpretation of the virtually identical language of § 706(c). *See* —— U.S. at ——, 99 S.Ct. 2066.

11. The Supreme Court in *Oscar Mayer* cited our decision in *Voutsis, supra,* with approval. *See* —— U.S. at ——, ——, 99 S.Ct. 2066.

preme Court liberally construed the filing provision of § 706(c) and decided that a charge submitted initially in error to the EEOC may be kept in "suspended animation" by the Commission and automatically referred to the appropriate state agency. 404 U.S. at 526, 92 S.Ct. 616. After the sixty-day deferral period ended, the Court concluded, the EEOC may begin its own investigation. *Id.* Thus, the Court spared the unwary litigant of the obligation of "filing" a second EEOC charge sixty days after the first one was sent to the state agency, the proper recipient.

█ In our view, the clear import of *Love* is that a charge held, like Silver's, in "suspended animation," is "filed" under § 706(e) when the EEOC *first* receives it, and not when the sixty-day period ends.[12] As the *Love* Court noted, to construe the statute to require a second "filing" after the state proceedings had concluded would create an additional procedural obstacle without advancing the purposes of the statute. 404 U.S. at 526–27, 92 S.Ct. 616.[13] We therefore hold that Silver's charge was "filed" under § 706(e) on June 15, 1976, 291 days after he was discharged and well within the 300-day limit.[14] In sum, we believe

the requirement in § 706(c) that no charge be "filed" before the deferral period ends simply means that the EEOC may not process a Title VII complaint until sixty days after it has been referred to a state agency.

█ This interpretation not only serves the concern of Title VII for individual rights, but also comports with the overarching procedural scheme embodied in the statute. There is little doubt that § 706(c) is designed solely to provide state agencies with an opportunity, before the federal agency intervenes, to resolve disputes between employer and employee. *Oscar Mayer & Co., supra,* —— U.S. at ——, 99 S.Ct. 2066; *accord, Love, supra,* 404 U.S. at 526, 92 S.Ct. 616; *Voutsis, supra,* 452 F.2d at 892. Viewed in this light, it is clear that, because the charge is referred to the local agency after it is "filed" with the EEOC, appropriate respect is accorded the states. Moreover, in no sense can Title VII defendants be said to suffer prejudice or surprise under our reading of § 706(c), for the interpretation we have adopted does not countenance the filing of stale claims. *See Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 372, 97 S.Ct. 2447, 53 L.Ed.2d 402

---

**12.** It has been argued that if "filing" in § 706(c)' is not interpreted consistently with "filing" in § 706(e) a number of anomalies will arise. For example, we are told that if our construction of § 706(c) is adopted, a complainant in a state that has created an agency to process his charge has 300 days to file with the EEOC even if he does not file with the state first, although a complainant in a state without such an agency has only 180 days. See § 706(e); *Moore v. Sunbeam Corp.,* 459 F.2d 811, 825 n.35 (7th Cir. 1972).

Equally "anomalous procedural modes" however, arise under the district court judge's interpretation, as he himself recognized. *Silver v. Mohasco Corp.,* No. 77–CV–472, slip op. at 12 (N.D.N.Y. Oct. 17, 1978). Specifically, if NYSDHR had completed its investigation of Silver's charge within nine days, it would have been deemed "filed" with the EEOC on the 300th day and § 706(e) would have been satisfied. Because the state agency proceeding exceeded nine days, however, Silver was denied access to a federal forum. Thus, a complainant's fate would rest entirely with the state agency, a result specifically at odds with § 706(c)'s mandate that a state's procedural requirements "cannot foreclose federal relief."

*Oscar Mayer & Co., supra,* —— U.S. at ——, 99 S.Ct. 2066. Where, as here, both constructions lead to illogical treatment of similarly situated complainants, we prefer the interpretation that best vindicates the statutory purpose.

**13.** Although there is language in *Love* that can be construed as suggesting that a charge is "filed" after the sixty-day period ends, *see, e. g.,* 404 U.S. at 526 & n.5, 92 S.Ct. 616; *Moore, supra,* 459 F.2d at 824, this reading is contradicted both by the passage cited in text and by the "clear import" of the Court's analysis, *Vigil v. American Telephone & Telegraph Co.,* 455 F.2d 1222, 1224 (10th Cir. 1972).

**14.** We find no merit in appellee's contention that if a charge is "filed" with the EEOC and then forwarded to a state agency it is not "initially instituted" with the state as required by § 706(e). Appellee asserts that in such a situation the complainant has only 180 days to file with the EEOC. *Love* clearly recognizes that the EEOC may satisfy the deferral requirements of Title VII itself by simply notifying the state agency that a charge has been received. *See* 404 U.S. at 525–26, 92 S.Ct. 616.

(1977); *accord, Love, supra,* 404 U.S. at 526, 92 S.Ct. 616. In the instant case appellee had ample notice of the proceedings before the state agency, EEOC, and the district court, which occurred in the sequence envisioned by Title VII. In such a case, we are compelled to reaffirm our conclusion in *Voutsis, supra,* 452 F.2d at 892 (footnote omitted):

> To place an unnecessary stumbling block in the private litigant's path, particularly when the national enforcement agency has carried out the federal mandate of accommodation to state action, would be hypertechnical and overly legalistic, and would improperly shield a discriminatory organization from the reach of civil litigation.

The views of three of the four circuits that have considered the precise question before us are substantially in accord with our own. *See Vigil v. American Telephone & Telegraph Co.,* 455 F.2d 1222 (10th Cir. 1972); *Anderson v. Methodist Evangelical Hospital, Inc.,* 464 F.2d 723 (6th Cir. 1972); *Richard v. McDonnell Douglas Corp.,* 469 F.2d 1249 (8th Cir. 1972).[15] Indeed, the *Vigil* court stated that the statutory construction we adopt today follows inexorably from the decision of the Supreme Court in *Love. See* 455 F.2d at 1224.

Only the Seventh Circuit has held otherwise. In *Moore v. Sunbeam Corp.,* 459 F.2d 811 (7th Cir. 1972), then-judge Stevens relied on a literal reading of the statute to prevent the EEOC from "filing" a charge until sixty days after its "receipt."[16] In our view, the statute's legislative history and clearly stated remedial function foreclose this result. We, therefore, disagree with the statutory construction adopted by the Seventh Circuit.[17]

### C.

We note also that the legislative history of Title VII is not silent on the question before us. Indeed, before the statute was amended in 1972,[18] the Senate passed a bill designed to make explicit the construction we are adopting today. *See* S. 2515, 92d Cong., 2d Sess., 118 Cong.Rec. 289, 290 (1972).[19] The House-Senate Conference Committee, however, retained the pre-1972 language because "[n]o change in these provisions was deemed necessary in view of the recent Supreme Court decision of *Love v. Pullman Co.,*" 118 Cong.Rec. 7564 (1972). Moreover, the Conference Committee explicitly endorsed the decision of the Tenth Circuit in *Vigil* and stated that "in order to protect the aggrieved person's right to file with the EEOC within the time periods specified . . ., a charge filed ·with a State or local agency may also be filed with the EEOC during the 60-day deferral peri-

---

**15.** We do not reach the question, decided affirmatively by all three circuits, whether initial receipt of the charge by the EEOC "tolls" the § 706(e) statute of limitations. Rather, we interpret § 706(c) in a manner consistent with the result reached in *Vigil, Anderson,* and *Richard.* Moreover, we note that the Tenth Circuit employed our statutory construction as an alternative ground in *Vigil, supra,* 455 F.2d at 1224.

**16.** We note that the Supreme Court eschewed a literal reading of a nearly identical provision of the Age Discrimination in Employment Act, 29 U.S.C. § 633(b), in *Oscar Mayer, supra,* over a dissent by Justice Stevens, —— U.S. at ——, 99 S.Ct. 2066.

**17.** The reliance of Judge Meskill and the Seventh Circuit on the "compromise which made it possible to pass the Civil Rights Act," 459 F.2d at 820–21, is rendered inappropriate by the clear legislative history of the 1972 Amendments to the statute. *See* Part II.C & note 19 *infra.* Because the events in *Moore* transpired before these Amendments took effect, the court refused to consider their impact. *See* 459 F.2d at 829–30. We are not so precluded.

**18.** *See* Pub.L.No.92–261, 86 Stat. 103 (1972).

**19.** S. 2515 would have removed any reference to "filing" in § 706(c) and would have stated instead that "the Commission shall take no action" before the expiration of the sixty-day deferral period. The Senate asserted that

> [t]he present statute is somewhat ambiguous respecting Commission action on charges filed prior to resort to the State or local agency. The new language *clarifies* the present statute by permitting the charge to be filed but prohibiting the Commission from taking action with respect thereto until the [deferral] period has elapsed.

S.Rep.No.92–415, 92d Cong., 1st Sess. 36 (1971) (emphasis added).

od." *Id.* It appears clear, therefore, that Congress accepted our interpretation of the statute as correct.

■ Finally, in cases arising under Title VII, we must accord "considerable deference" to the interpretations of the EEOC, the agency charged with administration of the statute. *Egelston, supra,* 535 F.2d at 755 n.4; *accord, Oscar Mayer & Co., supra,* —— U.S. at ——, 99 S.Ct. 2066. The EEOC has consistently maintained that a charge is "filed" on the day it is received by the federal agency, without regard to the intervening deferral period. *See* 29 C.F.R. § 1601.12(b)(1)(v)(A) (1977).[20] In its current regulations, the EEOC clearly states that

> [t]he timeliness of a charge shall be measured for purposes of satisfying the filing requirements of section 706(e) of Title VII by the date on which the charge is received by the Commission. 29 C.F.R. § 1601.13(a).

### III

■ We turn now to the second issue raised on this appeal—whether the district court can properly consider Silver's allegations of "blacklisting." Judge Foley determined that the scope of the EEOC's inquiry was of necessity limited to the period of Silver's employment, and that he therefore lacked power to adjudicate charges of post-employment blacklisting. We believe, however, that Title VII claimants should not be held to the precision of a code pleader.

■ Charges of post-employment blacklisting fall within the broad remedial scope of Title VII. *Pantchenko v. C. B. Dolge Co.,* 581 F.2d 1052, 1055 (2d Cir. 1978). And to furnish a remedy against discrimination in employment, no matter what specific form the invidious practice takes, we have embraced the same flexible approach in interpreting Title VII complaints that we have adopted in construing the statute's filing requirements. *See, e.g., Weise, supra,* 522 F.2d at 413; [21] *Noble v. University of Rochester,* 535 F.2d 756, 758 (2d Cir. 1976); *Egelston, supra,* 535 F.2d at 754–55.

■ We look not merely to the four corners of the often inarticulately framed charge, but take into account the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Smith v. American President Lines,* 571 F.2d 102, 107 n.10 (2d Cir. 1978); *accord, Tipler v. E. I. duPont deNemours & Co.,* 443 F.2d 125, 131 (6th Cir. 1971). Accordingly, we have previously construed Title VII charges to include allegations of "continuing discrimination" that occur "even after" the complaint is filed. *Noble, supra,* 535 F.2d at 758; *accord, Oubichon v. North American Rockwell Corp.,* 482 F.2d 569, 571 (9th Cir. 1973); *Ortega v. Construction & General Laborers' Union,* 396 F.Supp. 976, 980 (D.Conn.1975).[22]

■ Under the *American President Lines* standard, Silver's allegations of black-

**20.** The regulation read as follows:
> In cases where the document is submitted to the Commission more than 180 days from the date of the alleged violation but within the period of limitation of the particular 706 Agency, the case shall be deferred pursuant to the procedures set forth above: *Provided, however,* That unless the Commission is earlier notified of the termination of the State or local proceedings, the Commission will consider the charge to be filed with the Commission on the 300th day following the alleged discrimination and will commence processing the case. Where the State or local agency terminates its proceedings prior to the 300th day following the alleged act of discrimination, without notification to the Commission of such termination, the Commission will consider the charge to be filed with the Commission on the date the person making the charge was notified of the termination.

The EEOC has consistently followed this administrative policy throughout the past ten years. It has filed a brief *amicus curiae* in this case, maintaining the same position.

**21.** We confronted a similar problem in *Weise* in which a Title VII complainant had been deprived of a judicial forum due to the Commission's miscomprehension of her complaint, and because the district court did not take her attempts at corrective measures into account. 522 F.2d at 413. Under such circumstances, Silver, like the complainant in *Weise,* deserves a judicial resolution of his charges.

**22.** Because of our conclusion in Part II, *supra,* we find it unnecessary to determine whether Silver's allegations of blacklisting constituted a claim of "continuing violations" for purposes of § 706(e). *See, e.g., Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 246 (3d Cir.), *cert.*

listing cannot be said to have caught the EEOC by surprise. Silver alleged the existence of a comprehensive "plan" directed at Jewish executives. Indeed, the EEOC, although it did not investigate Silver's blacklisting charges, now concedes they were "reasonably related" to the original charge. *See* Brief for the Equal Employment Opportunity Commission as *Amicus Curiae,* at 15–17. Moreover, on August 31, 1976, almost a full year before the EEOC announced its findings and only eleven days after the agency commenced processing Silver's charge, he supplemented his "rough, incomplete and hastily drafted" complaint by notifying both the EEOC and the state agency of alleged blacklisting. Silver fairly presented the blacklisting charge to the Commission and he may now pursue his allegations in the district court.

Reversed and remanded.

MESKILL, Circuit Judge, concurring in part and dissenting in part:

When the rights of litigants depend on the interpretation of legislation, whatever canon of statutory construction a party may fire at the opponent an equally authoritative but directly contrary shot will undoubtedly be fired in reply.[1] Caught as we are in the crossfire, it is understandable that judges sometimes wonder about the ratio of light to sound being generated by these attempts at persuasion. This, for me, is one of those times for wondering. If I were convinced, as the majority apparently is, that we must choose between interpreting the disputed statute (1) in accord with its language and contrary to its purpose, or (2) in accord with its purpose and contrary to its language, I too, following the learned canon that has been handed down to us, might have avoided over-solicitude for the letter of the statute and might have joined, without wincing, in carrying out its purpose. But we are not in such a predicament here. The majority has made a choice between two alternatives neither of which is presented by this case. Because both parties claim to have interpreted subsections 706(c) and 706(e) of Title VII in accordance with the purposes of Congress, our task is not to choose between effectuating or frustrating the purposes of Congress, but rather to determine which of the proferred interpretations in fact captures the purposes behind the words. Believing that in this case the purposes of Congress are furthered by a literal reading of these provisions, I respectfully dissent from part II of today's decision.[2]

---

denied, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

1. *See generally* K. Llewellyn, The Common Law Tradition: Deciding Appeals at 521–535 (1960).

2. I concur in the majority's affirmance of Judge Foley's order dismissing appellant's complaint as to the individual defendants. *See* majority's footnote 7, *supra.*

I also agree with part III of the majority opinion which states that the scope of the EEOC investigation which could reasonably have been expected to grow out of Silver's charge was sufficiently broad to encompass his allegation of blacklisting. EEOC regulations provide for the amendment of a charge to include additional unlawful practices "related to or growing out of the subject matter of the original charge." *See* 29 C.F.R. § 1601.12(b) (1978); *see also* 29 C.F.R. § 1601.11(b) (1976). In August of 1976, two months after first contacting the EEOC, Silver sent to the district director a letter clearly charging Mohasco with circulating bad references. I agree with the position taken by *amicus* EEOC on appeal;
whether viewed as an amendment to the earlier charge or as a new charge, this letter was sufficient to notify the EEOC that an investigation of blacklisting was called for. The EEOC's failure to investigate this aspect of Silver's complaint should not foreclose his access to a court hearing. To earn the right to sue, a Title VII complainant need only seek, in an appropriate manner, administrative relief. Failure to obtain relief at the administrative level is what prompts, rather than forecloses, the search for judicial relief.

Therefore, I would remand the case to the district court for a hearing on the blacklisting claims, which appear from the record to have been promptly filed with the EEOC. In addition, I would instruct the district court to reconsider, in light of our disposition on the blacklisting issue, whether there has been any assertion of a continuous pattern of discrimination that would work to save Silver's charge of discriminatory discharge despite what I view as his failure to make a timely filing with the EEOC as to the discharge complaint. *See Smith v. American President Lines, Ltd.,* 571 F.2d 102, 105–106 & nn. 5–6 (2d Cir. 1978).

Despite the much-emphasized complexity of Title VII, there is no dispute over the literal meaning of the two statutory provisions under examination. Section 706(c), the deferral provision, provides that in a state that has created an agency to hear employment discrimination claims (a "deferral state"), no charge may be filed with the EEOC until 60 days or 120 days (depending on how long the state agency has been in existence) after state proceedings have been commenced, unless such state proceedings have been earlier terminated. Section 706(e), the limitations provision, provides that charges must be filed with the EEOC within 180 days of the alleged unlawful employment practice, except that where an aggrieved party has initially instituted state proceedings, a charge must be filed with the EEOC within 300 days of the alleged unlawful practice.

The purposes behind these provisions are every bit as clear as their literal meanings. In *Love v. Pullman Co.,* 404 U.S. 522, 526, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), a unanimous Supreme Court explicitly stated that the purpose of Title VII's deferral provision is "to give state agencies a prior opportunity to consider discrimination complaints" while the purpose of the limitations provision is "to ensure expedition in the filing and handling of those complaints." Not surprisingly, the scheme enacted by Congress effectuates these two different goals by imposing two different requirements on those who seek to invoke the remedial provisions of Title VII. Thus, a charge *must not* be filed with the EEOC until after the expiration of the mandatory deferral period (or termination of state proceedings), yet a charge *must* be filed with the EEOC within 300 days of an alleged unlawful employment practice. As a practical matter, a person who complains to the EEOC within 180 days of an alleged illegal employment practice can be sure of neither tripping on the deferral threshold nor bumping against the limitations ceiling. Regardless of whether the relevant state has created an agency to which deferral is necessary, and regardless of how long any such agency has been in existence, and regardless of how

quickly any such deferral agency terminates its proceedings, the complaint will be timely.

The majority's refusal to read the statute as written interferes significantly with the congressional decision to require prompt action on the part of Title VII plaintiffs. The legislative history of the predecessor of § 706(e) makes clear that the section contains two different limitations periods not to reward persons in deferral states, but rather to ensure that they are not penalized for having to comply with the statute's deferral requirements.

As originally enacted in 1964, Title VII required extraordinary diligence on the part of complainants. The original limitations provision (then labelled section 706(d)), like present section 706(e), contained two different limitations periods. The statute provided for a basic 90 days filing period and a 210 day period—the latter to apply to cases where state procedures were followed. Looking at the legislative history of this original limitations section, in *Moore v. Sunbeam Corp.,* 459 F.2d 811 (7th Cir. 1972), Justice (then Judge) Stevens concluded:

> The legislative history as a whole indicates a basic purpose to require the complainant to make his initial filing within 90 days; the extension of the period to 210 days in certain states was plainly intended to permit him to "exhaust" the state procedures. There is no suggestion that complainants in some states were to be allowed to proceed with less diligence than those in other states. [Selections from the legislative history] indicate that unless a complainant pursues his state remedies with sufficient diligence to permit the state, within 210 days, either to complete its action or to have 60 days in which to act without federal interference, he may not file a timely charge with the EEOC.

459 F.2d at 825 n. 35. Before passage of the 1964 legislation, Senator Dirksen clearly explained the relationship of the proposed deferral section and the proposed limitations section:

"New subsection (d) [now labelled (e)] requires that a charge must be filed with the Commission within 90 days after the alleged unlawful employment practice occurred, except that if the person aggrieved follows State or local procedures in subsection (b) [now labelled (c)], he may file the charge within 210 days after the alleged practice occurred or within 30 days after receiving notice that the State or local proceedings have been terminated, whichever is earlier. *The additional 120 days is to allow him to pursue his remedy by State or local proceedings.*"

*Id., quoting* the EEOC's Legislative History of Titles VII and XI of Civil Rights Act of 1964 at 3018 (emphasis added). The equally unambiguous remarks of Senator Humphrey make clear that the 210 day limitations period for deferral cases was intended to protect a complainant against losing the right to file with the EEOC "simply because the 90-day period for filing with the Federal Commission has elapsed while he seeks to pursue State remedies." *Id., quoting* Legislative History, *supra,* at 3006.

When Title VII was amended in 1972, both limitations periods were lengthened. New section 706(e) specifies a base period of 180 days and a period of 300 days applicable to complainants subject to the statute's deferral requirements. The differential between the two remained the same: an aggrieved individual in a deferral state still has an extra 120 days in which to file with the EEOC so that compliance with the deferral requirements of the act can be achieved. Thus the limitations section as amended still ensure that no penalty is exacted from those in deferral states. No more diligence is required of those complainants than is required of their counterparts in states lacking deferral agencies.

Like the cases on which it relies, the majority opinion overlooks the legislative history which clearly establishes that the statute is to be applied as it reads. *See Richard v. McDonnell Douglas Corp.,* 469 F.2d 1249 (8th Cir. 1972); *Anderson v. Methodist Evangelical Hospital, Inc.,* 464 F.2d 723 (6th Cir. 1972); and *Vigil v. Amer-ican Telephone and Telegraph Co.,* 455 F.2d 1222 (10th Cir. 1972). The majority offers nothing to support the assumption, necessarily implicit in today's decision, that Congress intended to give complainants in deferral states a 120 day bonus and to excuse them from exercising roughly the same degree of diligence required of persons in non-deferral states. It should be noted that in 1975, the Eighth Circuit, sitting en banc, concluded that an examination of the legislative history excerpted above necessitated a rethinking of *Richard v. McDonnell Douglas Corp., supra,* which had attempted to interpret Title VII's filing requirements without reference to this history.

[I]t would not be in keeping with the intent of Congress to allow one individual 300 days to file a charge because of the fortuitous circumstance that the state where the claim arose is a deferral state, when another individual in a non-deferral state will have only 180 days in which to file. The purpose underlying the extended period in a deferral state is to give the state agency an initial opportunity to process the claim without jeopardizing the federal right, not to extend by 120 days the time for assertion of this federal right.

. . . . .

While we agree that "the statute leaves much to be desired in clarity and precision," . . . there is no doubt as to what the extended filing period in [§ 706(e)] was intended to accomplish. In the 1964 Act a complainant was given 90 days in which to file a charge of employment discrimination. However, due to the proviso in then [§ 706(b)] that the charge must first be made with a state or local agency if one exists, an additional 120 days was given to file a charge with the EEOC to allow a complainant to pursue his state or local remedies without prejudicing his federal right.

The extended filing period was not intended as a bonus for complainants residing in a deferral state but as a means of effecting an accommodation between the federal right and the requirement of pre-amendment [§ 706(b)] of initial resort to an available state or local agency.

We are here concerned with amended Title VII. However, except for an enlargement of time for filing a charge from 90 to 180 days and concomitant extension of the deferral provision to 300 days, there were no substantive changes made in [§ 706(d)] (renumbered [§ 706(e)]).

*Olson v. Rembrandt Printing Co.,* 511 F.2d 1228, 1231–33 (8th Cir. 1975) (footnote and citation omitted).

The only legislative history on which the majority relies is an excerpt from a report of the House-Senate Conference Committee on the 1972 amendments, which endorsed the decision of the Tenth Circuit in *Vigil.* However, the fact remains that in 1972 Congress chose to leave the design and wording of the limitations subsection intact; the only changes made were a renumbering of the section and the lengthening of the two limitations periods contained therein. In my view, since the intent of the enacting Congress is unambiguous and the amending Congress chose to retain the original scheme, the evidence is insufficient to permit the inference that the later Congress intended to accomplish wholly new ends by leaving intact the scheme constructed by an earlier Congress which had different purposes in mind. *See Oscar Mayer & Co. v. Evans,* —— U.S. ——, —— – ——, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979).

Finding little support in the language of the statute or in its legislative history, today's decision apparently rests on the widely accepted and reasonable principle that as a remedial statute often invoked by laypersons, Title VII should be interpreted flexibly so as to eliminate procedural barriers that serve no purpose. However this principle cannot be taken to authorize the judicial remodelling of all provisions of a remedial statute that place strict limitations on the access road to the newly-created remedy. For example, in *Love v. Pullman Co., supra,* the Supreme Court made three crucial observations in approving the EEOC practice of (1) making referrals to state agencies on behalf of complainants in deferral states and (2) delaying formal filing of a charge until expiration of the deferral period or termination of state proceedings.

First, the Court noted that the EEOC practice interfered with neither the policy of deferral to state procedures nor the goal of expedition in the handling of claims. Second, the Court noted that no legitimate interest of defendants was prejudiced. Finally, the Court noted that nothing in Title VII suggests that state proceedings may not be initiated by the EEOC acting on behalf of a complainant or that the EEOC may not delay the formal filing of a complaint until termination of state proceedings. It was these determinations that led the Court to conclude that requiring a second filing by a complainant "would serve no purpose other than the creation of an additional procedural technicality." 404 U.S. at 526, 92 S.Ct. at 619 (footnote omitted).

The EEOC practice in the instant case does not meet these tests. First, permitting a charge to be filed with the EEOC at any time within 300 days regardless of whether the extra time has been used as intended, is to sacrifice the diligence Congress sought to require of Title VII complainants. Although the majority assures us that the interpretation adopted today "does not countenance the filing of stale claims," I respectfully suggest that when Congress bestows new rights and remedies on some persons and imposes new obligations and liabilities on others, its judgment regarding how and when claims are to be asserted and preserved ought not to be lightly disregarded. "Even though a statute of limitations may 'permit a rogue to escape,' the legislative commands must be respected." *Moore v. Sunbeam Corp., supra,* 459 F.2d at 826 n. 37, *citing Toussie v. United States,* 397 U.S. 112, 123–24, 90 S.Ct. 858, 23 L.Ed.2d 156 (1970). Second, to the extent that the repose granted by Congress to potential defendants has been delayed, they have been adversely affected by the EEOC practice. Finally, the language of the statute indicates that the result reached today was simply not intended by the authors of Title VII. Deference to agency interpretation is appropriate only when consistent with deference to the intent of Congress.

Referring to the many "procedural requirements and time limitations that must

be met before a claim of discrimination can be brought to the attention of a federal court," and *citing Love v. Pullman, supra,* we have remarked:

> The procedures thus mandated exist not for their own sake, but rather in furtherance of substantive purposes . . . . [T]he rigid insistence on meticulous observance of technicalities *unrelated to any substantive purpose* is inappropriate.

*Weise v. Syracuse University,* 522 F.2d 397, 411, 412 (2d Cir. 1975) (citations omitted).[3] It must be remembered, however, that where, as here, a procedural requirement *does* further a substantive purpose, it is judicial disregard of the statutory design that is inappropriate.

**3.** It is interesting to note that the *Weise* Court apparently assumed, in dictum, that the deferral process was to be *completed* within 300 days:

> If the alleged unlawful employment practice occurs within a state or locality having a law prohibiting such a practice, an aggrieved person cannot file a charge with the EEOC until 60 days have elapsed after the commencement of such state or local proceedings. . . .

Resort to the EEOC *thereafter* is conditioned on the filing of charges not more than 300 days after the occurrence of the alleged unlawful practice or 30 days after the termination of state or local proceedings, whichever is earlier.

*Weise v. Syracuse University,* 522 F.2d 397, 411 (2d Cir. 1975) (footnote and citation omitted) (emphasis added).