Juanita LEWIS, Plaintiff,

v.

**NEW YORK TELEPHONE
COMPANY, Defendant.**

No. 83 Civ. 7129 (RWS).

United States District Court,
S.D. New York.

Dec. 3, 1984.

Charles E. Morrison, New York City, for plaintiff.

Bernard Yaker, Roger Karlebach, Bernard M. Byrne, New York City, for defendant.

## OPINION

SWEET, District Judge.

This action, brought by Juanita Lewis ("Lewis") against New York Telephone ("NYT"), alleges various acts of race discrimination in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), the Civil Rights Act of 1866 (42 U.S.C. § 1981), and various state common law rights. NYT has brought a motion for summary judgment which is granted with respect to all but one element of the Title VII claim and all of the state claims, but is denied with respect to the § 1981 claim.

## Prior Proceedings

On or about February 25, 1982 Lewis filed a complaint with the Equal Employment Opportunity Commission's ("EEOC") New York office alleging that NYT discriminated against Lewis by accusing her both of stealing files from a NYT office where she was employed and of cheating on a promotion test. The EEOC assigned the complaint docket number 021–82–2769. Consistent with the provision of Title VII, the New York State Division of Human Rights ("SDHR") had exclusive jurisdiction to investigate the case, but upon the request of Lewis SDHR waived its jurisdiction so that the EEOC could pursue its own investigation.

On August 9, 1983, after investigating Lewis' complaint, the EEOC concluded that there was no reasonable cause to believe that the allegations were true, and the charge against NYT was dismissed. Further, on August 9, 1983, Lewis was issued a "Notice of Right to Sue" on complaint 021–82–2769.

On May 23, 1983, Lewis filed a second complaint with the EEOC alleging that she had been discriminated against by being denied promotional opportunities as a result of her race. The EEOC assigned case number 021–83–2734 to this complaint. On July 28, 1983 this charge was resolved by the execution of a Negotiated Settlement Agreement, signed by the EEOC, NYT and Lewis, who was represented by counsel. The primary substantive paragraphs of the agreement state:

1. In exchange for the promises made by New York Telephone Company contained in paragraph (2) of this agreement, Juanita Lewis agrees not to institute a law suit under Title VII of the Civil Rights Act of 1964 based on Charge Number 021–83–2734 filed with the Equal Employment Opportunity Commission, and the Equal Employment Opportunity Commission agrees not to use this charge as the

jurisdictional basis for a civil action under Section 706(f)(1) of Title VII.

2. In exchange for the promises of Juanita Lewis and the Equal Employment Opportunity Commission contained in paragraph (1) of this agreement, New York Telephone Company agrees:

A. That Juanita Lewis has access and will continue to have access to the New York Telephone Company Employees Assistance Bureau for consideration of any complaint that she may have.

B. That Juanita Lewis will not be penalized in any future terms and conditions of her employment because she filed the instant charge.

3. This agreement constitutes the complete understanding between the respondent, charging party and the Equal Employment Opportunity Commission. No other promises or agreements shall be binding unless signed by these parties.

4. It is understood that this agreement does not constitute an admission by the respondent of any violation of Title VII of the Civil Rights Act.

Because the charge was settled, the EEOC did not issue Lewis a Notice of Right to Sue. Subsequent to the execution of the negotiated settlement, Lewis complained that NYT had breached the agreement by not promoting her. The EEOC investigated this complaint and found it meritless.

**The Complaint**

On September 28, 1983 Lewis filed the complaint in this action. Lewis states two distinct wrongs upon which she bases her federal causes of action. First, she alleges that despite 19 years of employment during which she performed competently and as a result of which she obtained in late 1981 a "satisfactory plus" rating, NYT refused to promote Lewis because she was black. Second, Lewis alleges that NYT subjected her to discriminatory harassment by unjustly accusing her of the theft of personnel records and cheating on a promotion test when Lewis successfully obtained a passing score on that test. Lewis claims that these actions by NYT constitute violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, 42 U.S.C. § 1981.

Lewis also has brought four pendent state claims. The first alleges a breach of contract on the part of NYT as a result of NYT's failure to promote Lewis subsequent to the July 28 agreement. The second alleges a breach of NYT's covenant of good faith and fair dealing by not successfully assisting Lewis in her efforts to obtain a promotion. The third alleges that NYT induced Lewis to enter into the July 28, 1983 agreement by informing her that she would have access to NYT's Employee Assistance Bureau and that this access would result in a promotion. Lewis claims that NYT has breached its agreement, apparently by failing to promote Lewis. Lewis' fourth and final state claim alleges that NYT maliciously and willfully failed to promote Lewis and thereby caused her to suffer humiliation, mental and emotional anguish and physical distress. Lewis consequently claims damages for the intentional infliction of emotional distress.

In her complaint Lewis alleges that on November 10, 1981 she informed her supervisor, Ms. Vivian Tate, of her intention to file an Upgrade and Transfer request for the Trunk Assignor Position. At the time she had an overall performance rating of "satisfactory plus." Lewis thereafter filed seven upgrade and transfer requests for promotion. Each request was "either deemed a renewal requiring additional clerical steps, or was deemed expired because of defendant's questionable employment practice grounded on race and sex discrimination of limiting the duration of an employee's request for promotion to one year, thus requiring me to continually reapply for a position which had vacancies and for which I was qualified." Lewis Aff. at ¶ 4. On January 29, 1982 Lewis alleges that in furtherance of NYT's intentional discrimination against Lewis as a result of her race she was falsely accused of cheating on a promotion test and stealing personnel records.

The deposition of Mr. Brian Lenahan, District Staff Manager of NYT at the time of the incidents recounts the following:

Q. Mr. Lenahan, did there come a time some time in 1981 in which Mrs. Lewis was accused of improper conduct as an employee of the New York Telephone Company, specifically accused of having taken personnel records?

A. Accused, no. Suspected, yes.

Q. What was the basis of your suspicion?

A. We had an incident involving her son who was an employee of our company and somehow, some way, to this day we still don't know exactly how it occurred, personnel records that Juanita had access to somehow or another ended up incorrectly or in the wrong filing location and were drawn upon and he was subsequently offered a job as a new employee while still being employed by us. He, the son, Melvin Lewis, upon receiving the second job offer, immediately took measures to resign from the Telephone Company and then subsequent to that, came back into the employee door again and was re-engaged in a different title. At the time that he was being re-engaged, he was asked to sign some document and one of the questions on these documents refers to whether you have had any previous Bell System experience. He denied having ever worked for the Bell System before. Shortly thereafter, about a week later, everything began to unfold and it was determined that he had falsified these records which enabled him to be re-employed. It was in connection with that investigation of her son that we tried to determine how records that should have been cancelled and withdrawn from that location somehow or another were reactivated and put into another file and it was in connection with that investigation that I approached Juanita and asked her if she had any awareness or had any idea as to how this had occurred. Up to this point I didn't even know there was any relationship between these two individuals.

Q. When you discussed this with her, what did she indicate to you?

A. I don't remember exactly what she said, but something to the effect that she had absolutely no knowledge, had no involvement, knew absolutely nothing about it.

Q. She denied knowledge of the incident?

A. Yes

Q. Other than the fact that she had access to these records, was there any other credible evidence that would support the belief that she had in fact taken these records?

A. No

Q. Very shortly thereafter, did Mrs. Lewis make an application through the Upgrade and Transfer Plan for promotion to Trunk Assignor?

A. I don't know exactly when the application was made, whether it was made before this or after the incident. I'm not quite sure, but I know at the time that this incident occurred, shortly thereafter, it did come to my attention she had a request or was submitting a request for the—and I'm not even sure of the title. I know it was a title that required qualification on the technical test.

Q. What test was that?

A. We have a variety of jobs within the Telephone Company, but in order to qualify for any one of those jobs, you must successfully pass a technical test. It's a two hour math, verbal.

Q. Is the technical test the same for all the jobs in question or are the technical tests different for each job?

A. No. For the family of jobs. I'm referring to, the technical test is one and the same.

Q. You do not recall the name of the test?

A. Name of the test? I don't know the technical—I don't recall the technical term for the test.

Q. Did Mrs. Lewis score in a passing range on this technical test?

A. Yes.

Q. Did you inform Mrs. Lewis that she would not be able to be promoted on the basis of the test she had just taken and would have to retake the test?

A. That is correct.

Q. Did you indicate that your reason for having her do this or follow this procedure was your belief that she had falsified her test?

A. No. As part of the investigation in connection with her son we undercovered a variety of irregularities in connection with test scoring. When we went back and looked at Melvin Lewis' test, certain irregularities cropped up such as double scorings which should automatically be considered as incorrect. We found cases where it appeared that two different pencils were being used to mark sense [sic] and in some cases the pressure being used in making the marked sense appeared to be different. We found the same irregularities when we looked at Juanita Lewis' test and there were a variety of others—I shouldn't say a variety. There was a group of other individuals where this also surfaced. Because of the irregularities we found on the test, I approached Juanita and told her that unless she was willing to retake the test, then we were not going to consider the test that she had taken as a valid test.

Q. Therefore, based upon your belief that she had in fact or someone had in fact altered her test and in fact she had access to certain records, you informed her that she would have to retake the same test again?

A. There were two separate—the records she had access to was one situation. The test records she did not have access to. There was, we felt, a conspiracy headed up basically by the test room administrator at the time who was subsequently dismissed.

Q. Who was that?

A. A gal by the name of Vivian Tate.

Lewis further claims that subsequent to her signing the agreement of July 28, 1983, she made an appointment for an interview with Mr. Smith of NYT's employee assistance bureau. Lewis claims that the meeting was unsatisfactory because she did not "receive any redress of [her] charges of the defendant's failure to promote [her]." Lewis alleges that "my sole consideration in entering into the settlement agreement was my promise not to commence a lawsuit against the defendant. My promise was given in exchange for the defendant's promise to promote me and to give me further counselling." Lewis Aff. at ¶ 36.

**Law**

### A. Title VII Claim

NYT argues that Lewis is barred from bringing her Title VII claims because she failed to obtain the Notice of Right to Sue authorization which is a prerequisite to any Title VII action. *See* 42 U.S.C. § 2000e, *Silver v. Mohasco Corp.*, 602 F.2d 1083 (2d Cir.1979); *EEOC v. Bailey Co., Inc.*, 563 F.2d 439 (6th Cir.1977); *Sanchez v. Standard Brands*, 431 F.2d 455 (5th Cir.1970); *Almendral v. N.Y. State Office of Mental Health*, 568 F.Supp. 571 (S.D.N.Y.1983). Indeed, NYT argues, the agreement Lewis signed with NYT explicitly barred Lewis from basing a Title VII claim upon the facts in controversy in EEOC charge 021–83–2734.

■ To the extent that Lewis's Title VII claim encompasses charges within the scope of EEOC complaint 021–83–2734, her action is barred both by the failure to obtain a Notice of Right to Sue letter and by the explicit bar to such a suit within the contract Lewis signed, upon advice of counsel, with NYT. However, the Title VII claim that Lewis has brought includes not only the allegations within EEOC charge 021–83–2734, but also the allegations within EEOC charge 021–82–2769 (*see* Complaint ¶ 11). Because Lewis obtained a Notice of Right to Sue letter with respect to the claims in EEOC charge 021–82–2769, there is no procedural bar to her bringing a Title VII action based upon the allegations within that charge. Consequently, to the extent that the Title VII action is based upon allegations of false accusations of

cheating on promotion tests and improper possession of personnel files it survives NYT's arguments.

Moreover, although the scope and nature of Lewis' claims with respect to the racial harassment and discrimination alleged in ¶ 11 are not explicitly defined, such harassment has, in certain circumstances, been found violative of Title VII. *See Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007 (2d Cir.1980) ("discriminatory or disparate treatment in violation of Title VII occurs where the employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment.") *Henson v. City of Dundee*, 682 F.2d 897 (11th Cir.1982) ("Therefore, courts have held that an employer violates Title VII simply by creating or condoning an environment at the workplace which significantly and adversely affects an employee because of his race or ethnicity, regardless of any other tangible job detriment to the protected employee.") *Smith v. Secretary of Navy*, 659 F.2d 1113, (D.C.Cir.1981); *Bundy v. Jackson*, 641 F.2d 934 (D.C.Cir.1981). *See generally Note, Sexual Harassment Claims of Abusive Work Environment Under Title VII*, 97 Harv.L.Rev. 1449 (1984). Whether Lewis can prove the requisite elements of a harassment claim, *see cases supra*, is unclear. Because NYT did not consider the harassment claim to be an element of Lewis' complaint, however, it did not attempt to demonstrate the non-existence of genuine issues of material fact with respect to that claim. Lewis in her responsive papers similarly did not demonstrate either the existence of genuine issues of material fact or her ability both to establish a prima facie case and to refute as pretextual NYT's justifications for its actions. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Consequently, that aspect of the Title VII claim arising out of the test cheating and personnel records aspects of Lewis' com-

plaint survives this motion for summary judgment.

**B. § 1981 Claims**

NYT, relying on *Migra v. Warren City*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); and *Mitchell v. National Broadcasting Co.*, 553 F.2d 265 (2d Cir.1977), argues that res judicata bars Lewis' § 1981 claims to the extent they allege facts common to EEOC complaint No. 021–83–2734. The cases NYT relies upon are inapposite, however, since they deal with the scope of 28 U.S.C. § 1783, the statutory enactment of the Constitution's "full faith and credit" clause. Each of the cases involved a prior state court ruling and a subsequent federal civil rights action. *See Sinicropi v. Nassau Cty.*, 601 F.2d 60 (2d Cir.1979) ("The crucial factor is that appellant chose to submit her case to the state courts for review and she cannot now relitigate the same issues in federal court"). The facts of this case involve only *federal* administrative and judicial processes. The cases cited by NYT do not establish any *res judicata* effect for EEOC findings upon subsequent federal judicial hearings. Indeed, even where the EEOC finds no reasonable cause to believe the allegations in a Title VII complaint filed with the EEOC, a plaintiff, upon issuance of a Notice of Right to Sue, is entitled to *de novo* review by the federal court. Further, the Supreme Court has stated that "the remedies available under Title VII and under § 1981, although related, and although directed to most of the same ends, are separate, distinct, and independent." *Johnson v. Railway Express Agency*, 421 U.S. 454, 461, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975). A plaintiff pursuing a § 1981 remedy need not await the completion of Title VII administrative procedures. *Id.* Finally, the agreement between Lewis and NYT settling EEOC complaint 021–83–2734 by its terms limits Lewis' right to bring only Title VII claims. Neither a *res judicata* nor a contract bar exists to Lewis' § 1981 action based upon the allegations of

EEOC complaint 021–83–2734. Nor does the Lewis-NYT contract, whose scope is limited to complaint 021–83–2734, bar those aspects of Lewis' § 1981 claims that are based upon the facts alleged in EEOC complaint 021–82–2769.

▆ NYT asserts, further, however, that Lewis fails to allege and assert facts tending to establish a prima facie case of a § 1981 violation. Because NYT viewed the § 1981 claim as encompassing only the allegation relating to the failure to promote, and not the allegation of harassment, NYT directed its argument only to that aspect of the cause of action. In order for Lewis to make out a prima facie case alleging a failure to promote, she must allege 1) that she belongs to a racial minority, 2) that she applied and was qualified for a job for which the employer was seeking applicants, 3) that she was rejected despite her qualifications, and 4) after her rejection the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *Williams v. Interstate Motor Freight Systems,* 458 F.Supp. 20 (S.D.N.Y.1978); *see McDonnell Douglas, supra.* Although the complaint may not prove the validity of the claims or present excessive factual support for the assertions, it alleges that Lewis' applications were repeatedly and intentionally rejected as a consequence of Lewis' race. Because genuine issues of fact remain with respect to the actual condition of Lewis' applications, the frequency and timeliness of her applications, and the reasons stated by NYT to justify the failure to promote Lewis, granting summary judgment against Lewis' claim would be inappropriate at this time.

Further, the harassment aspect of Lewis' § 1981 claim survives summary judgment for the same reasons that the harassment aspect of the Title VII claim survived. *See Whatley v. Skaggs,* 707 F.2d 1129 (10th Cir.1983).

**State Claims**

▆ Lewis' first three state claims hinge upon finding in the July 28 agreement an obligation on NYT's part to promote Lewis.

Only if NYT contractually agreed to such a promotion could NYT be held liable for the failure to promote, the gravamen of each of Lewis' first three state claims. There is, however, no such obligation in the July 28 agreement and these claims must therefore be dismissed.

▆ Lewis' fourth state claim also fails to state a cause of action. The fourth claim alleges the intentional infliction of severe mental distress as a result of NYT's refusal to promote Lewis. In *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (Ct.App.1983), the Court held: " 'Liability [for intentional infliction of emotional distress] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.' The facts alleged by plaintiff regarding the manner of his termination fall far short of this strict standard." *Id.* 461 N.Y.S.2d at 236, 448 N.E.2d at 90. Lewis alleges only the failure of NYT to promote her. This alone is an insufficient predicate for the tort of intentional infliction of emotional distress.

### Conclusion

NYT's motion for summary judgment on Lewis' Title VII claim is granted to the extent that the Title VII claim depends upon facts alleged in EEOC complaint 021–83–2734 and is denied with respect to those parts of the Title VII claim which depend upon facts alleged in EEOC complaint 021–82–2769. The motion for summary judgment is denied with respect to Lewis' § 1981 claims but is granted with respect to Lewis' state claims. Discovery in this case shall be completed by January 30, 1985 and a joint pretrial order submitted by February 6, 1985.

IT IS SO ORDERED.