**Caroline R. STACY, Plaintiff,**

v.

**MICHIGAN EMPLOYMENT SECURITY COMMISSION and Michigan Civil Service Commission, Defendants.**

**No. G76–645 CA1.**

United States District Court, W. D. Michigan, S. D.

Nov. 13, 1980.

H. Rhett Pinsky, Grand Rapids, Mich., for plaintiff.

George M. Elworth, Asst. Atty. Gen., Lansing, Mich., for MCSC.

James H. White, Asst. Atty. Gen., Detroit, Mich., for MESC.

## OPINION

HILLMAN, District Judge.

Plaintiff initiated this action on behalf of herself and other women similarly situated, seeking declaratory and injunctive relief regarding the deprivation of employment–related rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Plaintiff challenges a mandatory maternity discharge policy adopted by defendant Michigan Employment Security Commission (MESC), pursuant to regulations of defendant Michigan Civil Service Commission (MCSC) and conduct toward her based on that policy.

The defendants MESC and MCSC have both filed motions to dismiss. At the time set for oral argument on these motions, defendant MESC withdrew its motion to dismiss, reserving the right to renew that motion after an opportunity for further discovery. The matter is presently before the court on defendant MCSC's motion to dismiss brought pursuant to Rule 12(b)(1), (2) and (6) of the Federal Rules of Civil Procedure, and based on lack of jurisdiction over the subject matter, lack of jurisdiction over defendant MCSC and failure to state a claim upon which relief can be granted.

## FACTS

Plaintiff was first employed by defendant MESC as a general clerk 03 on October 10, 1960. On February 11, 1972, pursuant to a mandatory maternity discharge policy, plaintiff was terminated from her employment with MESC at the end of her seventh month of pregnancy.

This policy was adopted on February 21, 1955, and provides:

"Pregnant employees of the MESC with Civil Service Status may be retained on active duty for a period not to exceed completion of the seventh month of pregnancy."

Plaintiff was a stenographer clerk 05 in the MESC offices in Grand Rapids, Michigan, at the time of her termination. At that time, plaintiff's physician had advised MESC that she was physically able to continue work beyond February 11, 1972.

After the birth of her child, plaintiff notified MESC that she was able and prepared to return to work on July 6, 1972. Defendant MESC, on or about July 14, 1972, notified plaintiff that she would not be rehired. However, on or about August 15, 1972, MESC offered her reinstatement in a position different from that held prior to her termination and at a reduced salary. Plaintiff alleges that male employees of the defendant, upon return from leave, were reinstated in their former positions, without reduction in salary, upon informing their employer that they were prepared to return to work. This discrepancy in treatment between women returning from pregnancy related absences and men returning from absences occasioned by other physical disabilities, plaintiff claims, amounts to sex–based discrimination.

On February 8, 1972, plaintiff, in accordance with the provisions of Section 706(d) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(d), timely filed a charge with the Michigan Civil Rights Commission alleging that defendants had engaged in sex–based discrimination in violation of the Michigan Fair Employment Practices Act, M.S.A. § 17.458(3)(a) [M.C.L.A. § 423.303(a)] and Section 703(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a). Subsequently, the Equal Employment Opportunity Commission (EEOC) assumed jurisdiction. On March 29, 1976, the EEOC found reasonable cause to believe that the plaintiff had been the victim of sex discrimination. On September 20, 1976, plaintiff received a right to sue letter and subsequently, on December 17, 1976, initiated

this suit in the Federal District Court for the Western District of Michigan. Caroline Stacy has commenced her suit within the requisite 90 days after receipt of a right to sue letter, pursuant to the terms of the letter itself and the provisions of Section 706(f) of Title VII, 42 U.S.C. § 2000e–5(f)(1).

Plaintiff has alleged two grounds of sex–based discrimination. First, she claims that defendants by their policies, practices and conduct wrongfully terminated her employment on February 11, 1962. Secondly, defendants have wrongfully refused to reinstate her in her former position.

In her original complaint, plaintiff claimed that both actions constitute sex–based discrimination in violation of Title VII. At oral argument, however, plaintiff acknowledged that the court lacks jurisdiction to consider the original termination of her employment because the act by the defendant, in discharging the plaintiff, had been completed on February 11, 1972, before Title VII had been amended to apply to state governments as employers.[1]

Defendant MCSC argues that because Title VII did not apply to state governments at the time of plaintiff's termination, that termination was not wrongful. Further, the original refusal to reinstate her and the subsequent reinstatement in a lower status and lower salaried job are merely continuing effects of the original discharge. Because the termination itself was not a violation of Title VII, according to defendant, the subsequent refusal to reinstate cannot be a violation of Title VII. Defendant claims that when plaintiff was terminated she had no continuing rights for employment with defendant MESC and gained no new right by the intervening amendment to Title VII. Consequently, defendant argues, there is no federal question raised under Title VII by either the termination of plaintiff or subsequent refusals to reinstate her, and the court is without jurisdiction of the subject matter.

## OPINION

■ The court agrees with the parties that it lacks jurisdiction to consider the original discharge of plaintiff. Plaintiff's complaint relating to her allegedly wrongful discharge on February 11, 1972, fails to raise a federal question under Title VII. The termination took place and the conduct of the defendant was complete on February 11, 1972. This conduct, however sex–based and discriminatory it may have been, was not prohibited by Title VII on that date. Not until March 24, 1972, some 1½ months after plaintiff was discharged, was Title VII amended to apply to state governments. The amendment to Title VII was not retroactive in its application to any conduct of defendant MESC or MCSC prior to its effective date of March 24, 1972. Accordingly, plaintiff's complaint of wrongful discharge under Title VII, will be dismissed because the court lacks jurisdiction of the subject matter.

Defendant maintains that, after her discharge at the end of her seventh month of pregnancy, plaintiff retained no rights to be reinstated in her prior position with MESC, regardless of what may have been a discriminatory discharge and regardless of any intervening effect of the March 24 amendment to Title VII. Civil Service chose to give her some rehiring preference, but defendant claims that it was not required to offer plaintiff any preference at all in reinstatement.

The underlying issue is whether the defendants could, consistent with the newly–effective provisions of Title VII prohibiting sex–based discrimination, continue to refuse to reinstate the plaintiff based on her pregnancy related discharge. When defendant MESC reinstated plaintiff, did Title VII prohibit defendants from treating plaintiff differently from male employees returning from personal leaves or leaves of absence

1. Public Law 92–261 included what is commonly referred to as the 1972 Amendments to Title VII. Subsections (a) and (b) of § 2000e, *Definitions*, were amended to include within the term "person" and "employer" governments, governmental agencies, and political subdivisions. This amendment extended the coverage of Title VII to include state and local governments and became effective March 24, 1972.

for other physical disabilities? Underlying these questions is a basic factual issue, that is, whether plaintiff maintained any continuity of her employer–employee relationship with MESC such that certain rights to be employed free of sex–based discrimination accrued to her because of the intervening amendment to Title VII. Plaintiff maintains in her complaint that she had certain rights to be reinstated as similarly situated men would have been, without discrimination based on her sex or prior pregnancy.

The court is not prepared to dismiss plaintiff's complaint based on defendant's continuing refusal to reinstate her in the position she held before a maternity leave was imposed upon her. Plaintiff relies on the "continuing violation" theory and the court finds that there is some merit in the application of that theory to the facts of this case.

In the case of *In re Consolidated Pretrial Proceedings in the Airlines Cases*, 582 F.2d 1142 (7th Cir. 1978), the court was faced with a similar issue. That case involved an interlocutory appeal from pre–trial proceedings in consolidated Title VII class action suits by female flight attendants against American Airlines and Transworld Airlines (TWA).

In the TWA action, a class had been certified that included all female cabin attendants who were terminated from employment with TWA on or after July 2, 1965, based on their pregnancy. In the district court, TWA moved to exclude from plaintiff's class all employees who had been terminated more than 90 days prior to May 31, 1970, the date that the original charge had been filed with the EEOC. Defendant claimed that the court lacked subject matter jurisdiction over the claims of the plaintiffs it sought to exclude from the class.[2] The district court denied TWA's motion and refused to exclude women from the plaintiffs' class who had been terminated more than 90 days before the filing of the EEOC claim on the grounds that:

" . . . the alleged unlawful employment practice was a 'continuing violation' so that even though the termination may have occurred more than 90 days before the plaintiff class filed its charge with the EEOC, the no–motherhood policy, which caused not only the termination, but also the *failure to reinstate*, continued into the 90–day period and *itself constituted an unlawful employment practice* which continued until TWA abandoned the policy in October 1970." 582 F.2d at 1148. (Emphasis added.)

The Seventh Circuit Court of Appeals affirmed this conclusion in part. A distinction was drawn between terminated employees who returned to work with TWA and those who did not re–establish the employment relationship.[3] The returning employee, the court concluded, has a continuing relationship with her employer and if her reinstatement is tainted by the effects of a discriminatory reinstatement policy, she has a presently viable action under Title IV.[4] The same reasoning appropriately applies to the facts of the case presently before this court.

"Those employees in the present case who were terminated but reinstated in ground duty positions after their maternity leave pursuant to TWA's policy, are in a different position. These employees were properly included in the class because they were subject to a *continuing violation.* When they resumed employment after becoming a mother, the discriminatory violation, which lay dormant during their pregnancy, was revived; that they were forced to accept a presumably less preferable ground duty position while new employees were hired for flight duty revived the violation and rendered it as to them a continuing one." 582 F.2d at 1149. (Emphasis added.)

---

**2.** At the time that the complaint in the TWA suit was filed, Title VII required in 42 U.S.C. § 2000e 5(d) that a charge must be filed with the EEOC within 90 days after the alleged unlawful employment practice. In 1972, this provision was amended to extend the time limit to 180 days and the section was reidentified as § 2000e 5(e). Compliance with the 90/180 day filing rule is jurisdictional.

**3.** The court acknowledged that this is a delicate distinction but nonetheless an important distinction. I agree.

**4.** The Seventh Circuit in its opinion in *In re Consolidated Pretrial Proceedings* said:

The crucial issue is the continuity of the employment relationship. When plaintiff resumed employment after having given birth, and after the amendment to Title VII making its provisions applicable to her employer, the original discriminatory termination although not itself a violation of Title VII at the time of the discharge, was in a sense revived and was incorporated in the employer's allegedly discriminatory reinstatement policy or practice in August of 1972.

The Seventh Circuit Court of Appeals in the *Airlines* case, *supra*, found that the TWA case was distinguishable from the Supreme Court's opinion in *United Airlines v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). In *Evans*, plaintiff was terminated from employment as a flight attendant with United Airlines in 1968, on the basis of a "no–marriage" rule. United subsequently abandoned the rule and plaintiff was hired as a new employee in 1972 without credit for her seniority accumulated before the 1968 termination. In 1973, some five years after the original termination, she filed a charge with the EEOC claiming that her reinstatement without seniority continued the discriminatory effect of the 1968 termination. The court concluded that the "present effects" of a past discriminatory act was not sufficient to state a claim under Title VII. United was entitled to treat the past act (i. e., the 1968 termination) as lawful after plaintiff failed to file a timely charge with the EEOC.

If plaintiff in *Evans* had filed an EEOC claim within 90 days after her discharge based on United's "no–marriage" policy, or within 90 days from the date that United discontinued that policy, the court would have been presented with a different issue and might well have reached a different conclusion about the question of the continuing nature of the violation.

Here plaintiff initiated a timely EEOC complaint based on her allegedly discriminatory discharge. The fact that there has been no hiatus of five years, as in *Evans*, between plaintiff's original discharge and the filing of her EEOC complaint, and further that she was reinstated within two months after she informed her employer that she was prepared to return to work, makes this case significantly distinguishable from the facts of *Evans*.

Consequently, based on the reasons set forth above, defendant MCSC's motion to dismiss is denied.