Dorothy K. MEEHAN
v.
NEW ENGLAND
SCHOOL OF LAW, et al.

Civ. No. 78-1257-N

United States District Court
D. Massachusetts

**April 29, 1981**

[12]We do not dismiss the claim against the state defendant Pratt in his individual capacity. It is true that the absence of bad faith and malice is a defense in an action for damages against a state official protected by the doctrine of qualified immunity. The burden of pleading and proving this affirmative defense, however, is on the defendant. See, **Gomez** v. **Toledo,** 100 S.Ct. 1920 (1980); **Slotnick** v. **Garfinkle,** 632 F.2d 163 n.2 (1st Cir. 1980). Moreover, the relief requested by the plaintiffs is primarily injunctive and declaratory.

[13]The named plaintiffs Vera Mamroth and Alice Gonzaga allege they are being refused Medicaid benefits. Their loss of SSI benefits was, however, due to OASDI cost-of-living increases. Both meet all the criteria that the defendants represent they apply in determining Medicaid eligibility. If either has been made eligible since the pleadings were filed, she is of course without an immediate claim.

**James R. DeGiacomo** for the defendant
**Richard L. Neumeir** for the plaintiff

## MOTION TO DISMISS

NELSON, D. J. The seed from which this case grew was the termination of the plaintiff, Dorothy Meehan, from the faculty of New England School of Law (NESL). According to Meehan, that seed was planted when the defendants[1] denied

---

[1]The original defendants were NESL, two of its former deans, Collin Gillis and Cornelius Daly, and its entire board of trustees. However, two trustees, Vincent R. Brogna and Andrew A. Godimis, were dropped as defendants pursuant to a stipulation dated September 22, 1980.

her the opportunity to be reviewed for tenure, a right to which Meehan claims she was entitled pursuant to her contract with NESL. In her amended complaint, Meehan alleges that the defendants thereby breached NESL's contract with her and discriminated against her on account of her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e et seq.[2]

The defendants moved to dismiss Meehan's amended complaint. In support of their motion, the defendants argued that Meehan had failed to state an actionable Title VII claim because she did not file a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC), as required by 42 U.S.C. sec. 2000e-5(e). The defendants further argued that, absent an actionable Title VII claim, this Court should not exercise its pendent jurisdiction to hear Meehan's state law contract claim. Meehan responded that her EEOC charge was filed in a timely fashion, and submitted a number of exhibits in opposition to the defendants' motion. I received those exhibits at the hearing on the motion as one for summary judgment, as required by Fed. R. Civ. P. 12(b)(6). For the reasons stated herein, I find that Meehan did file a timely charge of discrimination; therefore, the defendants' motion is denied.

A complaint founded on Title VII is subject to summary judgment in the defendants' favor if the undisputed facts reveal that the plaintiff did not file a timely charge of discrimination prior to bringing the action. Such a charge must be filed "within 180 days after the alleged unlawful employment practice occurred". 42 U.S.C. sec. 2000e-5(e)[3] Therefore, resolution of the defendants' motion requires identification of their alleged unlawful employment practice.

Succinctly stated, Meehan's claim is that the defendants violated Title VII by failing to accord her the rights due to a NESL faculty member who is eligible for tenure, and that this conduct resulted in her eventual termination from the faculty.[4] Moreover, Meehan claims that the defendants further violated Title VII by failing to reinstate her to her former position. To understand when these alleged violations occurred, a brief recitation of the process by which a NESL faculty member becomes eligible for tenure must accompany a chronology of the key events.

To become eligible for tenure, a NESL faculty member must have practiced law or taught law for a minimum of five years. At least three of these years must have been spent teaching law, and at least one of these years must ordinarily have been spent teaching at NESL. A faculty member becomes eligible for tenure upon completion of these requirements without receiving notice that his or her contract at NESL will not be renewed.

Meehan began practicing law in 1953, but she did not begin teaching law until she was hired by NESL as an assistant professor for the one-year period

---

[2] The amended complaint also contained a count founded on Massachusetts' anti-discrimination statute, M.G.L. c. 151B. That count was dismissed on December 1, 1980, after the plaintiff assented to defendant's motion to dismiss it.

[3] Under some circumstances, the period allowed for filing a charge with the EEOC is extended to 300 days. 42 U.S.C. § 2000e-5 (e). However, if the defendants violated Title VII, they did so either less than 180 days, or more than 300 days, prior to the date on which Meehan filed her EEOC charge. Therefore, I need not decide whether Meehan was entitled to the benefit of the longer filing period.

[4] A NESL faculty member who is eligible for tenure is entitled to be reviewed for tenure by the Faculty Tenure Committee (the "Tenure Committee"). The Tenure Committee is composed of the dean of the law school and all tenured members of the faculty. If the Tenure Committee does not award tenure on this occasion, then the eligible faculty member is reconsidered for tenure one year later. If tenure is again denied on this second occasion, then the faculty member's contract with NESL is terminated on July 31 of the year following the second denial.

beginning August 1, 1971. Her contract with NESL was renewed on two occasions, at higher salaries, for the one-year periods beginning August 1, 1972 and August 1, 1973. The last of these contracts expired on July 31, 1974, although the semester actually ended a couple of months earlier. In June of 1974, NESL's Faculty Tenure Committee began its consideration of Meehan and five male faculty members for tenure. However, during the month of July, Meehan was notified by several of the defendants that she would not be given a standard, one-year contract for the 1974-75 academic year. Instead, pursuant to a resolution adopted by the board of trustees on July 29, 1974, Meehan was offered only a terminal, one-year contract to teach elective courses during the 1974-75 academic year. Significantly, that contract contained a provision whereby Meehan waived any rights that she might have had to be considered for tenure. The parties signed this contract on September 5, 1974. In light of these events, the Tenure Committee gave no further consideration to awarding tenure to Meehan.

These events did not end matters, however. Meehan complained to the faculty that she had been the victim of discrimination, and, on June 18, 1975, the faculty approved a resolution recommending that Meehan file a complaint with the Section on Legal Education of the American Bar Association (the "ABA Section"). Meehan filed such a complaint, and the ABA Section appointed Edward S. Godfrey, a former dean of the University of Maine Law School, and now a member of the Supreme Court of Maine, to hear her complaint. Godfrey conducted a hearing in Boston on November 12, 1975, at which all parties were afforded an opportunity to present evidence. Based upon that hearing, Godfrey concluded that NESL had erred in failing to treat Meehan as a person eligible for tenure.[5] He did not, however, express any opinion about the effect of the one-year contract covering the 1974-75 academic year that NESL and Meehan had signed in September of 1974. Moreover, Godfrey did not, and the parties agree he could not, direct NESL to reinstate Meehan. Instead, Godfrey recommended that NESL clarify its rules about tenure eligibility to avoid similar confusion in the future. He notified all the parties of his conclusions during December of 1975 and January of 1976. NESL did not reinstate Meehan after Godfrey issued his report. Indeed, defendants Judge Lawton and Dean Gillis declined to even put the matter on the agenda of the trustees' meeting in January of 1976.

Meehan filed her charge with the EEOC on March 21, 1976. On the same day, she filed a complaint with the Massachusetts Commission Against Discrimination (MCAD). Subsequently, MCAD waived jurisdiction to the EEOC at Meehan's request. Thereafter, on May 23, 1978, the EEOC determined that there was reasonable cause to believe that Meehan's charge was true and attempted to conciliate the dispute. 42 U.S.C. sec. 2000e-5(f)(1). This suit followed.

The sole issue to be decided on this motion is whether Meehan filed a timely charge of discrimination with the EEOC. Meehan's principal claim of discrimination is that the defendants improperly prevented her from being reviewed for tenure, and that this conduct resulted in her eventual termination from NESL's faculty. In addition, Meehan claims that the defendants violated Title

---

[5]Godfrey concluded that Meehan became eligible for tenure because the second semester of the 1973-74 academic year ended before the defendants notified her that she would not be awarded a standard, one-year contract for the 1974-75 academic year. Thus, Godfrey found that the notice given to Meehan by the defendants in July of 1974 came too late to prevent Meehan from becoming eligible for tenure, even though that notice preceded the expiration of Meehan's contract for the 1973-74 academic year.

VII by failing to reinstate her, particularly after Godfrey issued his report.

Were Meehan's claim of discrimination solely that she had been improperly terminated from the faculty, her EEOC charge would clearly have been untimely. The time period allowed for filing a charge with the EEOC based on a claim of discriminatory termination from employment is 180 days,[6] and that period begins to run on the date that the employer's decision to terminate becomes final. **Delaware State College v. Ricks**, 101 S. Ct. 498 (1980). The decision to terminate Meehan from NESL's faculty became final at the meeting of NESL's board of trustees on July 29, 1974, or, at the very latest, when the parties signed the terminal one-year contract on September 5, 1974. And it is undisputed that Meehan did not file her charge with the EEOC until March 21, 1976, approximately one and one-half years later.

However, Meehan alleges more than a discriminatory termination. She alleges that the defendants also violated Title VII when they failed to reinstate her to her former position, particularly after Godfrey issued his report. She claims that this conduct is actionable for two reasons: first, because it was a new and discrete violation of Title VII, and second, because it converted the initial termination into a continuing violation of Title VII.

Termination of employment is ordinarily a one-time act, and the actors in such a drama ordinarily do not contemplate an ongoing relationship. **Daughtry v. King's Department Stores, Inc.**, 608 F. 2d 906, 909 (1st Cir. 1979); **Accord, Jacobs v. Board of Regents**, 473 F. Supp. 663, 668 (S.D. Fla. 1979); **Wallace v. International Paper Co.**, 426 F. Supp. 352, 355 (W.D. La. 1977). However, discrete post-termination acts may form the basis of a new claim for relief under Title VII. Thus, for example, in **Tarvesian v. Carr Division of TRW, Inc.**, 407 F. Supp. 336 (D. Mass. 1976),

the Court found that an employee could sue her former employer under Title VII based on her claim that the employer had sent disparaging references to prospective employers and that this conduct was discriminatorily motivated, even though the original dismissal had not been made the subject of a timely charge. **Accord, Shededeh v. Chesapeake & Potomac Telephone Co.**, 595 F. 2d 711 (D.C. Cir. 1978).

Failure to rehire or reinstate may also form the basis of a new Title VII claim, providing that the plaintiff can show some new act of discrimination in such failure, **Weise v. Syracuse University**, 522 F. 2d 397 (2d Cir. 1975); **Dowtin v. City of New York**, 18 E.P.D. P. 8832 at 5546 (S.D. N.Y. 1978); **Al-Hamdani v. State University of New York**, 438 F. Supp. 299 (W.D. N.Y. 1977); **Wallace v. International Paper Co., supra; Johnson v. Southern Railway Co.**, 19 E.P.D. P. 9076 (N.D. Ga. 1977), assuming, of course that there is a vacancy to be filled. **Ciccone v. Textron, Inc.**, 616 F. 2d 1216, 1218 (1st Cir.), **vacated on other grounds**, 101 S. Ct. 311 (1980). Here, Meehan alleges that, but for her sex, the defendants would have reinstated her after Godfrey concluded that the school erred in failing to treat her as a faculty member eligible for tenure. Moreover, Meehan alleges that vacancies existed in the faculty at the time that Godfrey issued his report. Although I express no opinion about the likelihood that Meehan can prove this claim, I do think that it is sufficient to withstand the defendants' motion. Moreover, Meehan may introduce evidence about the entire history of her employment at NESL in order to prove that the defendants were motivated by discriminatory animus in failing to reinstate her. **United Air Lines, Inc. v. Evans**, 431 U.S. 553, 558 (1977); **Al-Hamdani v. State University of New York, supra**, 426 F. Supp. at 354.

---

[6]See n.3, **supra**, and accompanying text.

Meehan's second claim is that the defendants' failure to reinstate her in light of Godfrey's conclusions converted their violation of Title VII into a continuing one. As such, Meehan argues that her EEOC charge was timely with respect to the 1976 failure to reinstate and the 1974 termination.

To establish that a violation of Title VII is a continuing one, the plaintiff must show that both the discrimination and the injury are ongoing. **Goldman v. Sears, Roebuck & Co.,** 607 F. 2d 1014, 1018 (1st Cir. 1979); **See also, United Air Lines, v. Evans, supra.** Obviously, a continuing violation may take the form of a regular, ongoing practice of the employer such as a discriminatory seniority system or discriminatory hiring requirements. See, **for example, LeBoeuf v. Ramsey,** 503 F. Supp. 747 (D. Mass. 1980); **Hansbury v. Regents of University of California,** 596 F. 2d 944 (10th Cir. 1979); **See also, Franks v. Bowman Transportation Co.,** 424 U.S. 747, 758 (1976). Perhaps less obvious are cases in which the continuing violation takes the form of a series of related, but discrete acts. **Goldman v. Sears, Roebuck & Co., supra,** 607 F. 2d at 1018. If one of these discrete acts occurs within 180 days (or, in some cases, within 300 days) prior to the date on which the EEOC charge is filed, then all the acts will be deemed to have been made the subject of a timely EEOC charge.

Meehan's claim is that the defendants committed a continuing violation of Title VII by virtue of a series of discrete acts, the last of which was the defendants' failure to reinstate her after Godfrey released his report. Without more, an employer's failure to reinstate an employee to a former position is not a continuing violation. **Goldman v. Sears, Roebuck & Co., supra,** 607 F. 2d at 1017-1019. What is not clear is what more an employee must show in order to persuade a court that a discriminatory termination has been converted into a continuing

violation by virtue of an employer's refusal to rehire the employee to the same position. Some courts have indicated that, if the employee shows that the employer had a contractual duty to rehire or recall him, then the failure of the employer to do so may convert the original termination into a continuing violation. **Woodburn v. LTV Aerospace Corp.,** 531 F. 2d 750, 751 (5th Cir. 1976); (per curiam), (analysing analogous provisions of the Age Discrimination in Employment Act, 29 U.S.C. secs. 621-34 (ADEA) ); **Wagner v. Sperry-Univac, Division of Sperry-Rand Corp.,** 458 F. Supp. 505, 512 (E.D. Pa. 1978) (ADEA); **Brohl v. Singer Co.,** 407 F. Supp. 936, 939 (M.D. Fla. 1976) (ADEA); **Chant v. U.S. Postal Service,** 14 F.E.P. Cases 839 (N.D. Tex. 1976). Similarly, other courts have reached the same result where the parties maintained an ongoing employer-employee relationship. **In re Consolidated Pretrial Proceedings in the Airline Cases,** 582 F. 2d 1142 (7th Cir. 1978) (rehired in less desirable positions); **Stacy v. Michigan Employment Security Commission,** 500 F. Supp. 884 (W.D. Mich. 1980); **Jacobs v. Board of Regents, supra,** 473 F. Supp. at 669; **Hyatt v. Agricultural & Technical College,** 21 E.P.D. P. 30, 509 (E.D. N.Y. 1979).

The present case seems to be quite different from these cases. It does not appear that the defendants had a contractual duty to rehire Meehan in light of Godfrey's report. Moreover, the parties had no ongoing employer-employee relationship after Meehan left NESL at the conclusion of her one-year terminal contract for the 1974-1975 academic year. Instead, all that appears is that, in refusing to reinstate Meehan, the defendants did nothing more than reaffirm their earlier decision to terminate her from NESL's faculty. However, I think that Meehan should be given the opportunity to demonstrate that the violation was a continuing one.

Therefore, the better course is to deny this aspect of the defendants' motion.
**David S. Nelson**
**United States District Court**

**Tallulah MORGAN et al.**
v.
**John J. McDONOUGH et al.**